EARL GLENDEN Le BAR v. EWALD BROS. DAIRY AND ANOTHER.[1]

March 17, 1944.

No. 33,658.

[1]Reported in 13 N. W. (2d) 729.

*Brenton A. McLeod,* for relators.
*John A. Goldie,* for respondent.

HOLT, COMMISSIONER.

*Certiorari* to review a decision of the industrial commission awarding compensation to respondent for an accidental injury sustained June 3, 1941, while playing softball on the Parade Ground, a public park in the city of Minneapolis. There is no substantial dispute as to the facts.

Relator Ewald Bros. Dairy, a partnership, has for many years operated an extensive dairy with some 50 or more milk routes in Minneapolis. For some years prior to 1941 there was an organization known as the "Union Milk League," in which some eight large dairies had softball teams contesting for the championship. Ewald Bros. had a team, which they furnished with balls, bats, and other equipment, including shirts with the name of "Ewald" or "Ewald Brothers" in large letters on the back of the shirts. The partnership paid an entrance fee for the season of $15. With the end of 1940, the Union Milk League was abandoned, and in its stead the Commercial Gold Division League was formed. The only difference between that and the Union Milk League seems to be that the contesting softball teams were not confined to the employes of dairies, but included such ball teams from the employes of commercial houses or businesses. The games were played in public parks; the

entrance fee for the team for the season was the same as before; the athletic director of the Minneapolis Park Board arranged the schedule of the games; and they were played according to the rules and regulations of the board, which furnished an umpire and kept the score of the teams for the newspapers. It appears that the partnership never required its employes to play on the team or to attend practice games. It was wholly voluntary on the part of each player. At the end of the season the partnership gave the team a banquet at some cafe. There is evidence that the Ewalds paid one expert pitcher $100 as a bonus for accepting a position in their dairy business. But there was no other instance of a bonus to a player to enter the employment of the partnership. The games and practice plays were after regular hours of employment in the dairy business. The team was not furnished transportation to or from the playground. The players selected their own captain, who aligned the players in the games. The part taken by the park board was to furnish recreation for the residents of the city in its parks. The Ewalds contend that what they did was to secure the good will of the public by the publicity given their dairy business. Besides the softball team, the Ewalds also had a girls' bowling team, for which they furnished blouses with the Ewalds' name in conspicuous letters; but the members of the team were not employes. The same was the case with a baseball team of boys, and some other players of contest games, such as hockey, football, and golf; but it is not deemed necessary here to refer to them in detail.

Relators claim that respondent is excluded from compensation by Minn. St. 1941, § 176.01, subd. 11 (Mason St. 1927, § 4326[j]):

"Without otherwise affecting either the meaning or interpretation of the abridged clause 'personal injuries arising out of and in the course of employment,' it is hereby declared:

"Not to cover workmen except while engaged in, on, or about the premises where their services are being performed, or where their services require their presence as a part of such service, at the time of the injury, and during the hours of service as such workmen; * * *."

Relators, the Ewalds and their insurer, assign as errors that each of the findings of the commission numbered IV, VI, VII, and VIII are contrary to the evidence. We think that findings IV, VI, and VII are supported by the evidence and not contrary thereto. There may be some doubt as to that part of finding VII, which is that the "primary" purpose of Ewald Bros. Dairy in entering its team in said league was to obtain the good will resulting from the advertising incident to the playing of such contests. Ray Ewald, the member of the partnership who had charge of the athletics, testified to the partnership's paying the entrance fee of the team on which respondent was a player in the season of 1941, to furnishing the bats, balls, and uniforms of the team, and giving the banquet at the close of the season. Ray also testified that the expense of the partnership for athletics rose to as much as $1,000 a year for several years, and that they were forced to cut down. On some occasions they had broadcast their contest games. Whether it was the *primary* purpose of the dairy company to obtain the good will of the public by the advertisement given, or one of the purposes, does not seem very important.

The chief and controlling question is whether respondent when injured was excluded from the workmen's compensation act by § 176.01, subd. 11 (§ 4326[j]), above quoted. Concededly, respondent when playing on the team when injured was not engaged in any actual work of the dairy business. It occurred after his regular hours of work. His employers had not ordered him to be there. He knew he lost no wage, nor did he endanger his position as an employe by not participating in the game. As stated, the commission found that respondent's accidental injury "arose out of and in the course of his employment." This could only occur if the game then being played was incident to and a part of the partnership's business. From the activities displayed by the Ewalds in athletics for more than ten years, the inference is at hand that they, at least, concluded that these contest games were essential or desirable for their dairy business. Therefore, the challenged finding VIII is justified. Relators rely on O'Rourke v. Percy Vittum Co. 166

Minn. 251, 207 N. W. 636, but the facts of that case have no resemblance to those of the one at bar. The cases of Ramczik v. Winona M. & F. Co. 174 Minn. 156, 218 N. W. 545, and Simonson v. Knight, 174 Minn. 491, 219 N. W. 869, also cited by the parties, afford very little help because of dissimilarity of the facts from those of the case at bar. The only decision by a court of which we are now aware is Holst v. New York Stock Exchange, 252 App. Div. 233, 299 N. Y. S. 255. There an accidental injury sustained by a page in the employ of the New York Stock Exchange, as he was playing on a soccor team with a like team recruited from employes of certain restaurants, was held to come within the New York compensation act, similar to ours insofar as § 176.01, subd. 11, reads, as quoted before. The only difference is that Holst's time as an employe continued during the game, while respondent's did not. Later cases following the Holst case are Piusinski v. Transit Valley Country Club, 259 App. Div. 765, 18 N. Y. S. (2d) 316, affirmed 283 N. Y. 674, 28 N. E. (2d) 401; Fagen v. Albany Evening Union Co. 261 App. Div. 861, 24 N. Y. S. (2d) 779. We are of the opinion that the industrial commission could justifiably find from the way in which the Ewald Bros. partnership had supported game contests of their employes that it was deemed by them an essential part of their business; hence, that respondent's accidental injury arose out of and in the course of his employment. Respondent may tax $100 as attorney's fees in this court.

Writ discharged and decision affirmed.

MR. JUSTICE YOUNGDAHL took no part in the consideration or determination of this case.