**OTT, Plaintiff-Appellant, v INDUSTRIAL COMMISSION OF OHIO, Defendant-Appellant.**

Ohio Appeals, First District, Hamilton County.

No. 7005.   Decided July 6, 1948.

C. R. Beirne, Cincinnati, for plaintiff-appellee.

Hugh S. Jenkins, Columbus, Edward A. Schott, Cincinnati, for defendant-appellant.

## OPINION

By ROSS, J.:

This is an appeal on questions of law from a judgment of the Court of Common Pleas of Hamilton County, allowing the plaintiff to participate in the State Insurance Fund by

reason of the death of her husband, an employee of the Crosley Corporation. The case was tried to the Court without a jury.

The immediate cause of the employee's death was "acute cardiac dilation, secondary to chronic endocarditis."

The facts are largely developed in a stipulation of counsel appearing in the Bill of Exceptions. There is little, if any, conflict in the evidence. It appears therefrom that the deceased was an employee of the Crosley Corporation, who performed duties as a guard. The corporation had adopted a recreational program for its employees, in which provision was made for the playing of base ball games. Playing equipment was furnished by the corporation, and the program was directed by a paid supervisor, who made arrangement for the forming of several teams of corporation employees, made the schedule of games, and selected sites for playing. The players wore shirts prominently displaying the name of the corporation or enough thereof to identify them as Crosley employees.

When the notice for enrollment of players was first posted, the deceased sought to join one of the regular teams, but was dissuaded from doing so because he was older than the players composing the teams and also because his work as a guard interfered with the time schedule of the games. The deceased then formed a team of "Crosley Guards," so designated upon the shirts worn by the players in his team. This was sufficient to identify the players as employees of the corporation and spectators of the games knew that the players were all Crosley employees. The teams opposing that led by the deceased were also Crosley employees.

The "Crosley Guards" were not entered in the main schedule of teams, and were not a part of the regular league of Crosley teams.

The "Crosley Guards" were, however, furnished by the corporation with playing equipment. The last game in which the deceased participated was played upon the grounds of the Cincinnati Workhouse, and the deceased made the arrangement for use of the playing field.

The "Crosley Guards" and the opposing team posted the sum of $20.00, the total deposit paid to the winning team, the losing team paying for refreshments for both teams. The teams in the regular Crosley League put up no forfeit, and played solely for a trophy awarded the winning team at the close of the schedule. There is no question that although the "Crosley Guards" were not included in the regular Crosley League that their activity was sponsored by the corporation and was in the general purview of the recreational program for employees of the corporation, designed to promote the health and the general welfare of the participants, cultivate

a friendly relationship with the corporation, and incidentally advertise its existence to the public. The peculiar incidents applicable to the team of the deceased therefore are not of sufficient importance to isolate the deceased and his teammates from principles of law applicable to the teams included in the regular league.

If a player in any of the teams composing such league could be brought within the application of the law applicable to Workmen's Compensation, then the deceased was also subject to such application. The difference between the status of the "Crosley Guards" and any team in the regular league was one of degree only and not principle.

It appears from the evidence that the deceased when playing his last game was running the bases when he was tagged out. He walked to the players' bench. Immediately thereafter, and upon being seated, fell dead, as a result of the cause previously noted.

The Industrial Commission denied the plaintiff claimant the right to participate in the insurance fund, in spite of a rule of the commission to the following effect:

"ATHLETICS. On April 26, 1929, The Industrial Commission adopted the following resolution, to-wit:

"Whereas, it appears that a number of employers are encouraging their employes to engage in athletics, such as baseball, basketball, etc., at times during working hours and other times outside of working hours, and

"Whereas, it has developed that employes while engaged in such athletic activities experience injuries, and claims are being filed in this department for such injuries, and

"Whereas, it is deemed advisable that some rule be adopted by the Commission as a guide under such circumstances:

"Be It Therefore Resolved by The Industrial Commission of Ohio, that in all cases where the employer encourages the employes to engage in athletics, either during working hours, or outside of working hours, and supervises and directs, either directly or indirectly, such activities, meritorious claims for injuries to any such employes while so engaged will be recognized, the employer's risk and experience to be charged with such cases. In the event any such employes, while so engaged, received extra compensation from the employer the same shall be included in the payroll reports to this department.

"This order shall not apply to employes who do not supervise and direct either directly or indirectly athletic activities of their employes or do not pay the employes for the time devoted to athletics."

The conclusion of the commission was that "decedent's death was not the result of an injury received in the course of and arising out of his employment."

Sec. 1465-55 GC, was construed by the Supreme Court in State, ex rel. v Industrial Commission, 128 Oh St, 573, it being stated in the syllabus:

"Sec. 1465-55 GC, delegates to the Industrial Commission of Ohio plenary power to adopt rules and regulations with respect to the collection, maintenance and disbursements of the State Insurance Fund.

"This delegation of power is given constitutional sanction by Article II, Section 35, Constitution of Ohio.

"The Industrial Commission cannot, in the exercise of its rule making power, enter a field that the General Assembly has preempted by legislative enactment.

"The Industrial Commission, being a state agency, is not estopped to plead the invaldity of rules adopted and promulgated by it."

And, at page 580 of the opinion, it is stated:

"We are likewise in harmony with the principle of law announced in the cases of Industrial Commission v Brown, 92 Oh St, 309, 110 N. E., 744, L. R. A., 1916B, 1277, and State, ex rel. Automobile Machine Co. v Brown, Secy. of State, 121 Oh St, 73, 166 N. E., 903, vix.:

" 'Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative so to do.'

"The Industrial Commission carried its rule along for ten years and must have construed it in the light of the existing law; hence we must accord to it the respect that it demands, and we do, but we cannot escape the rule announced in 1933 in the case of Norwegian Nitrogen Products Co. v United States, 288 U. S., 294, 77 L. Ed., 796, 53 S. Ct., 350.

" 'Administrative practice does not avail to overcome a statute so plain in its commands as to leave nothing for construction.' "

In Adkins v Staker, et al., 130 Oh St, 198, it is stated in the syllabus:

"The chief purpose of Section 35, Article II of our State Constitution, is to levy compulsory contribution upon em-

ployers in order to establish a state fund for providing compensation to workmen or their dependents. Under the provisions of that section the Legislature has been invested with the power of 'determining the terms and conditions upon which payment shall be made' out of the fund.

"The disposition of a claimant's compensation, or the fixing of fees payable out of the fund, is not the subject of private contract between a claimant and attorney. Both contributing employers and the state have an interest in the fund and in the terms and conditions upon which payment shall be made therefrom."

**Article II, Section 35 of the Constitution of Ohio** provides in part:

"For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen's employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom. * * * Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to determine all right of claimants thereto."

**Sec. 1465-68 GC,** provides in part:

"Every employee mentioned in §1465-61 GC, who is injured, and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted, on and after January 1st, 1914, shall be entitled to receive, either directly from his employer as provided in §1465-69 GC, or from the state insurance fund, such compensation for loss sustained on account of such injury or death, and such medical, nurse and hospital services and medicines, and such amount of funeral expenses in case of death as provided by §§1465-79 to 1465-87 GC inclusive.
* * *

"The term 'injury' as used in this section and in the workmen's compensation act shall include any injury received in the course of, and arising out of, the injured employee's employment."

Regardless of how long-standing the rule of the Industrial Commission may be, if it be in conflict with the Constitution or the statutes, it cannot prevail and extend compensation, if this be denied by such provisions of the Constitution or statutes. Therefore, if the death of the deceased was not due to "an injury received in the course of, and arising out of the injured employee's employment" no rule of the commission could make it so.

The question then presented is: Was the death of decedent due to an injury received in the course of his employment with the Crosley Corporation, and did such injury arise out of such employment?

The Supreme Court has not had before it the exact situation here presented, although other Courts in other states have found in favor of the claimant in somewhat similar circumstances. LeBar v Ewald Bros. Dairy, et al., 217 Minn. 16, 113 N. W. (2d) 729; Holst v New York Stock Exchange, 252 App. Div. 233, 299 N. Y. 255; Fagen v Albany Evening Union Co., et al., 24 N. Y. S. (2d) 779; Kenny v Lord & Taylor, et al., 254 N. Y. 532; Wilson v General Motors Corporation, 70 N. Y. (2d) 109; Kingsport Silk Mills v Cox, 161 Tenn. 470, 33 S. W. (2d) 90; Linderman, et al. v Cownie Furs, et al., 234 Iowa 708; Conklin v. Kansas City Public Service Co., 226 Mo. App., 309; Thomas v Procter & Gamble Co., 104 Kan. 432.

In view of the facts previously recited herein, and the weight of authority involving similar and related situations, it seems that there is sufficient relationship in the activity of the deceased at the time of his death to his employment to justify the conclusion that the claimant is entitled to compensation under the Constitution and statutes, as well as the rule of the Industrial Commission. It seems also apparent that both employee and employer received considerations from this activity which was the direct outgrowth of a recreational program which was not only authorized by the corporation, but definitely sponsored by it, and the means of its accomplishment furnished at the expense of the corporation.

The judgment is affirmed.

MATTHEWS, PJ, ROSS & HILDEBRANT, JJ, concur in syllabus, opinion & judgment.