## No. 16,945.

UNIVERSITY OF DENVER ET AL. *v.* NEMETH ET AL.

(257 P. [2d] 423)

Decided April 20, 1953. Rehearing denied May 11, 1953.

Mr. CHARLES W. SHELDON, JR., for plaintiffs in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission.

Mr. ROBERT SWANSON, Mr. ROBERT B. PALMES, for defendant in error Nemeth.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the court.

THIS cause is before us by writ of error to reverse a judgment of the district court sustaining the finding of the Industrial Commission, and an award based thereon, that defendant in error Nemeth, sustained accidental injuries while performing services arising out of and in the course of his employment by the University of Denver, a corporation.

Nemeth, alleging that he was an employee of the University of Denver, made claim for compensation benefits arising from an accidental injury, which the evidence shows was suffered while Nemeth was playing football on the University of Denver grounds. He was a student regularly enrolled in the College of Business Administration of the University. In April, 1950, while indulging in spring football practice, Nemeth suffered an injury to his back. At the time, he was receiving $50.00 per month from the University for certain work in and about the tennis court on its campus. There was deducted from this amount the sum of $10.00 per month for three meals per day, which Nemeth ate at the student cafeteria. In lieu of cash rental for housing accommodations which Nemeth occupied on the campus, he cared for the furnace and cleaned the sidewalks of these premises.

The record discloses that many other students at the University performed work in and about the stadium, field house and campus, for which they were compensated by the University. Most of these students were paid for work on an hourly basis. Those students who qualified on account of athletic prowess were paid on a monthly basis.

Nemeth maintains that he was employed to play football at the University, and that his injury arose out of and in the course of that employment, and this claim was sustained by the Industrial Commission. On appeal, the district court affirmed the award of the Commission, but from the record determined that the claimant was employed in jobs on the campus, with time off to par-

ticipate in football activities, and hence such participation in athletic activities was within the scope of his employment and compensable. Judgment was entered affirming the award of the Industrial Commission.

Plaintiffs in error contend: (1) That the University of Denver is solely engaged in the field of education, and its relation with students is not within the purview or intent of the Workmen's Compensation Act; (2) that the findings of fact do not support the award, in that the employment, if any, of claimant was casual and not in the course of the trade, business, profession or occupation of the University; (3) that the injury to claimant did not arise out of his employment, nor while he was performing services in the course of his employment; (4) that the award contravenes public policy, and (5) that this court is not bound by the findings of fact of either the commission or the district court.

It is argued by counsel for plaintiffs in error, "If the award is allowed to stand, the more than 800 students who are presently being assisted to obtain their education at the University of Denver must seek work elsewhere or quit their education." Therefore, counsel say the findings are against public policy. No authorities are cited in support of this contention, and we are at a loss to see where anything in this record requiring the application of the Workmen's Compensation law to Nemeth's situation in anyway contravenes public policy.

It is admitted that Nemeth was employed by the University and compensated for his work. Counsel for the University insists that he was not employed to play football, but to keep the tennis courts free from gravel and litter. It is admitted that the operation of the University required the services of many persons in order to properly function, these individuals being in addition to the faculty members, those performing clerical and other duties and not enrolled as students. It also is admitted that the University had more than four employees engaged on its behalf at the time Nemeth was

injured, thus making it subject to the provisions of the Workmen's Compensation Act. The fact that students augment the funds necessary for their maintenance while attending the University, does not alter the fact that they may be in the category of employees, subject to and entitled to the benefits of the workmen's compensation law. This is true irrespective of the amount of their earnings in the discharge of the duties assigned to them. Where, as here, a stipulated monthly amount is paid for a particular service rendered by one who is also a student, it cannot be said that the University is merely "assisting" the student to obtain an education, and that the student, if injured in the course of his employment, cannot have the benefits of the compensation law.

The University of Denver is a private corporation. It is not in any sense a charitable institution, as that term is known to the law. Workmen's Compensation Acts are being extended even to employees of charitable institutions. In *President and Directors of Georgetown College v. Hughes*, 130 F. 2d. 810, Judge Wiley Rutledge said: "In line with this view may be mentioned the general extension of the workmen's compensation acts and social security legislation to include the employees of charitable institutions. Also, as some of the more recent cases point out, much of modern charity or philanthropy is 'big business' in its field. It therefore has a capacity for absorption of loss which did not exist in the typical nineteenth century small hospital or college."

Neither can it be said that Nemeth was a casual employee. Higher education in this day is a business, and a big one. The University of Denver with its ten thousand students has, as the record discloses, hundreds of jobs for students and nonstudents. A student employed by the University to discharge certain duties, not a part of his education program, is no different than the employee who is taking no course of instruc-

tion, so far as the Workmen's Compensation Act is concerned.

Plaintiffs in error claim that the Workmen's Compensation Act was not intended to apply to students having part-time employment. This interpretation of the Act would result in coverage by the Act for the school janitor, and not for a part-time assistant, who also happened to be a student. We cannot believe that such was the intent of the General Assembly in passing the Act. It cannot logically be contended that there is any purpose of the Workmen's Compensation Act other than to protect all workmen, save those specifically excluded. *Consolidated Fast Freight v. Walker*, 103 Colo. 347, 85 P. (2d) 720; *Drake v. Hodges*, 114 Colo. 10, 161 P. (2d) 338.

What we have here said is sufficient to dispose of contentions numbered 1, 2 and 4 advanced by counsel for plaintiffs in error.

Counsel for plaintiffs in error states that these opportunities (free meals and a job) "were extended to Nemeth exclusively by reason of his being a student at the University," and had no connection with his football activities.

It appears from the record that Nemeth was informed by those having authority at the University, that "it would be decided on the football field who receives the meals and the jobs." He participated in football practice, and after a couple of weeks a list of names was read, which list included Nemeth's name, and he was then given free meals and a job. One witness said: "If you worked hard (in football) you got a meal ticket." Another testified that, "the man who produced in football would get the meals and a job." The football coach testified that meals and the job ceased when the student was "cut from the football squad."

Counsel for plaintiffs in error directs our attention to *Industrial Commission v. Murphy*, 102 Colo. 59, 76 P. (2d) 741. There, it appeared that no "time off" was

given the employee. The employee was not obliged to play baseball or attend any of the baseball games, and no employee was ever discharged or employed because of baseball. It must be observed in the Murphy case, the finding of the commission was adverse to claimant and was sustained by this Court.

The evidence before the Commission being sufficient to sustain its conclusion that the University was the employer, and Nemeth was one of its employees, as defined by section 287 (b), chapter 97, '35 C.S.A., and amended section 288 (b), appearing in S. L. '47, chapter 232, page 633, there remains the additional inquiry whether the injuries sustained by Nemeth arose out of and in the course of his employment. It has been repeatedly held in this state, and in every other jurisdiction, that the Workmen's Compensation Act must be liberally construed to give effect to its purposes. *Continental Oil Co. v. Sirhall,* 122 Colo. 332, 222 P. (2d) 612; *L. B. Cole Produce Co. v. Industrial Commission,* 123 Colo. 278, 228 P. (2d) 808. We have not had before us the exact situation here presented, although courts in other states have found in favor of claimant in somewhat similar circumstances.

"An injury arises out of the employment if it arises out of the nature, conditions, obligations or incidents of the employment; in other words, out of the employment looked at in any of its aspects." *Caswell's Case,* 305 Mass. 500, 26 N.E. 2d 328; *Souza's Case,* 316 Mass. 332, 55 N.E. 2d 611.

An analysis of the cases indicates that the controlling point is whether, under all of the circumstances, the injury arose from something which was incident to the employment. The case of *Thomas v. Proctor & Gamble Mfg. Co.,* 104 Kan. 432, 179 Pac. 372, is in many aspects analogous to the instant case. There, the claimant was an employee of a manufacturing company, paid by the hour, working from 7 A.M. to 12 o'clock noon, and from 12:30 to 5:30 P.M. She was not paid during

the noon hour, and during that period was at liberty to leave the premises, but she remained there; after eating her lunch, she engaged with other employees, following a custom known to and approved by the employer, in riding on a small truck. Her injury was incurred by falling from the truck, which was drawn by fellow employees. It was there held that the injury arose out of and in the course of claimant's employment. In the opinion, the Supreme Court of Kansas said: "It would perhaps not unduly extend the principle to say that the employer might, under some circumstances, have an interest in his employee's taking suitable exercise in a brief interval allowed for refreshment and rest."

The concluding paragraph in *Thomas v. Proctor & Gamble Mfg. Co., supra,* reads: "Inasmuch as the evidence may be regarded as establishing that the *play* in which the plaintiff was injured had become a settled custom, with the knowledge and indeed the express approval of the foreman in charge of the department, and without objection on the part of anyone, the court is of the opinion that her injury may be regarded not only as having occurred in the course of her employment, but as having arisen out of it." (Emphasis supplied)

In the instant case the employment at the University, so far as Nemeth was concerned, was dependent on his playing football, and he could not retain his job without playing football. The evidence before the Industrial Commission was to the effect that his job and other remuneration incident thereto came to an end when he ceased to "make good" in football. Under the record as here made, the Commission and the District Court may have properly concluded, as they did determine, that Nemeth was an employee of the University and sustained an accidental injury arising out of and in the course of his employment.

Mr. Justice Campbell in *Comstock v. Bivens,* 78 Colo.

107, 239 Pac., 869 said: "1 Honnold on Workmen's Compensation, section 114, says where an employee is doing something which, though not strictly in the line of his obligatory duty, is still doing something incidental to his work, and while doing the same is injured, the accident causing the injury may properly be held to arise out of and in the course of employment, and he will be entitled to compensation." See, also, *O. P. Skaggs Company v. Nixon,* 101 Colo. 203, 72 P. (2d) 1102.

*Holst v. New York Stock Exchange,* 299 N. Y. Supp. 255, is a case where a page employed by the stock exchange was injured while playing on a soccer team maintained by his employer. The officials and members of the exchange assisted in organizing the soccer and other athletic teams, and the employees were urged to engage in these competitive athletic sports. Employees were given time off for games and practice, and at times consideration was given to athletic prowess when the younger employees were hired. It was held that the maintenance of the teams was a matter of business, and that the claimant being injured while so playing, was engaged in his employment.

*Le Bar v. Ewald Bros. Dairy,* 217 Minn. 16, 13 N.W. 2d 729 was a case where Ewald Bros., engaged in a dairy business, sponsored softball teams and provided balls, bats and other equipment, including shirts with the name of "Ewald" printed on the back. Ewald Bros. never required its employees to play on the team, or attend practice games. Such participation by an employee was entirely voluntary. The games and practice plays were after regular hours of employment in the dairy business. Le Bar was injured while playing in a softball game. The chief and controlling question was whether Le Bar when injured was excluded from the Workmen's Compensation Act. The court said: "Concededly, respondent when playing on the team when injured was not engaged in any actual work of the dairy

business. It occurred after his regular hours of work. His employers had not ordered him to be there. He knew he lost no wage, *nor did he endanger his position as an employe by not participating in the game.* As stated, the commission found that respondent's accidental injury 'arose out of and in the course of his employment.' This could only occur if the game then being played was incident to and a part of the partnership's business."

In the instant case, Nemeth, by not participating in football, not only would endanger his position, but it is clear, even from the evidence produced by plaintiffs in error, he would lose his job.

In *Salt Lake City v. Industrial Commission,* 104 Utah, 436, 140 P. (2d) 644, a city fireman, injured while playing handball upon a court provided by the city, was granted an award. The Utah Supreme Court said: "The evidence clearly shows that the applicant was required to take exercises while on duty. As part of this exercise, the City encouraged the men to play handball and provided them with a handball court for that purpose. The appellant was injured while thus playing handball. We think that in view of this evidence the commission was warranted in concluding that the applicant suffered an accidental injury in the course of his employment."

The following quotation from Bradbury, Workmen's Compensation (3d ed.), 524, is approved in *Kingsport Silk Mills v. Cox,* 161 Tenn. 470, 33 S.W. (2d) 90: "The relation of master and servant, in so far as it involves the obligation of master to protect the servant, is not suspended during the noon hour, where the master expressly, or by fair implication, invites his servants to remain on the premises in the immediate vicinity of the work."

In the *Kingsport Silk Mills case, supra,* Cox, the employee, just after the noon hour fell on the floor of the main building of the employer while watching a bas-

ketball game by other employees on the court—being played by permission of, and encouraged by, the employer as a means of recreation for the employees. The fall was accidental, occasioned either while Cox was standing on, or walking across, the floor, which was slippery. The Supreme Court of Tennessee held that "such accident grew out of and in the course of her employment."

In *Holland-St. Louis Sugar Co. v. Shraluka,* 64 Ind. App. 545, 116 N.E. 330, the court said: "Such acts as are necessary to the life, comfort and convenience of the workman while at work, though personal to himself, and not technically acts of service, are incidental to the service; and an accident occurring in the performance of such acts is deemed to have arisen out of and in the course of employment."

In the instant case it was the settled practice of the University to insist that those who held the jobs and received the free meals, engage in football games under penalty of losing the job and meals. Hence the action of Nemeth in playing football was an incident of his employment by the University, well-known to it and a requirement which it imposed on claimant. "Where evidence sustained findings that ball team was sponsored by employer who supplied uniforms, permitted players to leave work before regular quitting time, scheduled games, did advertising, and had name appear on uniforms, award to employee for loss of use of hand as result of injuries suffered during ball game was proper although employee's normal occupation was that of a clerk." *Fishman v. Lafayette Radio Corporation,* 89 N. Y. S. 2d 563.

"Employee, who was injured while playing in a softball game on team fostered by employer, received compensable injuries 'arising out of and in course of employment,' where employer furnished playing equipment, permitted conferences of softball league's officials to be held on employer's time without deduction

of pay, and furnished nursing treatment to employee after his injury." *Wilson v. General Motors Corporation,* 70 N. Y. S. 2d 109.

In the instant case the University furnished medical and nursing treatment, not only to Nemeth, but for other football players who were injured.

*Ott v. Industrial Commission,* 83 Ohio App. 13, 82 N.E. 2d 137, is a case where an employee of a corporation, while engaged in playing baseball on a team sponsored by the corporation under a general recreation program for the employees of the corporation, suffered an injury resulting in the employee's death, the immediate cause of such death being "acute cardiac dilation, secondary to chronic endocarditis." The corporation furnished baseball equipment. Even though the baseball team on which the deceased employee played differed in some respects in its operation from the other teams forming a corporation baseball league, the Ohio court upheld a finding that the deceased died from injuries suffered in the course of his employment and from causes arising therefrom.

In Warren's Case, 326 Mass., 718, 97 N.E. 2d 184, the insurer conceded that at the time of the injury the employee was under contract of hire, but contended that he had not become an employee because the time for the commencement of his work had not come, that the employee had not yet reached even the administration building where he was to sign the papers regarding his employment, and he had not yet reached the athletic field where he was to begin work.

The court held that the employee could recover under the compensation act from Springfield College where the employee while on his way to report to the superintendent of buildings of the college was "run into by one of the students and his hip was broken." The court said, quoting from Souza's Case, 316 Mass. 332, 55 N.E. 2d 611, where an employee, injured while asleep in bed, was awarded compensation: "the employee, in

order to be entitled to compensation, need not necessarily be engaged in the actual performance of work at the moment of injury. It is enough if he is upon his employer's premises occupying himself consistently with his contract of hire in some manner pertaining to or incidental to his employment."

In the instant case, Nemeth at the time of his injury was in the employ of the University, was upon his employer's premises, occupying himself consistently with his contract of hire in a manner pertaining to or incidental to his employment.

In *Industrial Commission of the State of Colorado v. Golden Cycle Corporation,* 126 Colo. 68, 246 P. (2d) 902, the claimant at the time of the injury was eating his lunch, and it was contended that the injury did not arise out of and in the course of his employment. This Court said: "The vital question remains, can his injury, under the circumstances, be classed as 'arising out of' his employment. It arises out of the employment if it is connected with the nature, conditions, operations or incidents of the employment * * *. The claimant here, in the matter of eating his lunch at the time designated for that purpose on the premises of his employer, was doing so in the course of his employment."

Where claimant, a member of surveying crew, who had finished lunch with surveying crew during thirty minute lunch period, and was returning to campfire to join crew which was leaving for work fifteen minutes late after target practice with fellow crew member, which was a customary lunch period pastime, was shot in the leg when fellow crew member's pistol fell, hit a rock, and discharged, claimant's injury arose out of and in the course of his employment and claimant was entitled to compensation award. *Colson v. Steele* (Idaho), 252 P. (2d) 1049.

In *Industrial Commission v. Pueblo Auto Co.* 71 Colo. 424, 207 Pac. 479, we held that the death of an automobile salesman killed during a robbery, the

object of the robbers being to secure his car, when he was returning home from seeing a customer to whom he had sold an automobile, was an accident arising out of and in the course of his employment. In this case we said: "While it has been stated that these laws cover only dangers which might have been anticipated, yet the cases generally hold that if, after the injury, it can be seen that the injury was incurred because of the employment, it need not be such as to have been anticipated. We think that is the better rule."

In a lightning case, *Aetna Life Ins. Co. v. Industrial Commission,* 81 Colo. 233, 254 Pac. 995, Mr. Chief Justice Burke in a specially concurring opinion, used the following language: "When one in the course of his employment is reasonably required to be at a particular place at a particular time and there meets with an accident, although one which any other person then and there present would have met with irrespective of his employment, that accident is one 'arising out of' the employment of the person so injured."

In *London Co. v. McCoy,* 97 Colo. 13, 45 P. (2d) 900, we held, that where an employee, in carrying out the instructions of his employer, visited the home of another to contact a man whom it was necessary for him to see, and while there suffered a murderous assault by an insane man, resulting in his death, compensation was properly allowed his dependents, the accident being one "arising out of his employment."

In view of the facts herein recited and the weight of authority involving similar and related situations, it is apparent that there is sufficient relationship to the employment in the activity of Nemeth at the time of his injury to justify the conclusion that he is entitled to compensation.

The obligation to compensate Nemeth arises solely because of the nature of the contract, its incidents and the responsibilities which Nemeth assumed in order to not only earn his remuneration, but to retain his job.

He apparently had the physical ability and aptitude for football, and the University hired him to perform work on the campus, and as an incident of this work to have him engage in football.

██ If there is any evidence, whether direct or by reasonable inference, which will support the finding and award of the Commission, a reviewing court has no power to disturb it. The function of the court on review of the Commission's action is to determine whether the evidence, if believed by the Commission, is substantial and supports the findings. *Industrial Commission v. Murphy, supra; Zuzich v. Leyden Co.,* 120 Colo. 21, 206 P. (2d) 833; *Continental Casualty Co. v. Industrial Commission,* 124 Colo. 295, 238 P. (2d) 196.

There is ample evidence in the record to sustain the finding of the Commission that the injuries sustained by Nemeth arose out of and in the course of his employment. This being so, the award of the Commission was properly affirmed by the district court.

The judgment is affirmed.

Mr. Justice Alter dissents.

*On Petition for Rehearing.*

██ A rehearing is urged by counsel for plaintiffs in error because it is asserted that Nemeth's claim for compensation benefits was not filed in apt time. In the specification of points urged for reversal, this matter was not set forth, and it was not urged in the briefs filed by counsel for plaintiffs in error. It is now asserted that the filing date is a "vital part of the case." We decline to search the record for a matter now said to be "vital" but which was ignored in the presentation of points. The petition for rehearing is denied.