262 S.W.2d 344 (1953)
McFARLAND
v.
ST. LOUIS CAR CO.
No. 28687.
St. Louis Court of Appeals. Missouri.
November 17, 1953.
Rehearing Denied December 18, 1953.
Correnti, McKee, Rosenblum, Fitzgibbon & Goldenhersh, and Robert S. Goldenhersh, St. Louis, for appellant.
*345 Albert I. Graff, and Malcolm I. Frank, St. Louis, for respondent.
HOLMAN, Special Judge.
This is a proceeding under the Missouri Workmen's Compensation Law. Section 287.010 et seq. RSMo 1949, V.A.M.S. Jasper F. McFarland, Jr., the claimant-employee, has appealed from the judgment of the circuit court affirming the award of the Industrial Commission which denied his claim for compensation.
On June 17, 1949, the claimant received an injury to his left foot which resulted from an accident that occurred while he was participating as a player upon a softball team composed of employees of the St. Louis Car Company (respondent). The award of the referee was in favor of the employee, but, as already indicated, it was reversed upon review by the Industrial Commission.
The principal point briefed is whether the accident and resulting injury arose "out of and in the course of" McFarland's employment, as required by the provisions of Section 287.120, subd. 1 RSMo 1949, V.A.M.S. In view of the conclusion we have reached, this is the only issue we need to determine. Consequently, this opinion will not be burdened by a recital of the facts concerning the extent of claimant's disability, about which there was considerable conflict in the evidence. There is no disagreement indicated by the record or the briefs as to the facts dealing with the issue we will decide upon this appeal.
In May, 1947, a group of employees of the St. Louis Car Company decided they would organize a softball team. After investigating several leagues in which the team might compete it was decided that they would attempt to join the Y. M. C. A. Industrial League. The rules of this league required that the entrance fee of $50 be paid by the employer, and that all players must be employees of the company. John Ewersman, chosen as spokesman for the group, conferred with Mr. Meisner, Executive Vice-President of the company, and asked that the company pay the entrance fee. After some consideration, Mr. Meisner agreed that the company would make the payment and, thereafter, it also paid for some balls, bats and other equipment, including jerseys to be worn by the players. The name "St. Louis Car" appeared on the front of these jerseys.
The team was accepted by the Industrial League and competed therein during the years 1947, 1948, and 1949. It disbanded in 1950 because of a lack of players. During the years indicated the company continued to render financial assistance, expending about $200 each year for that purpose. Upon the company records these expenditures were charged to general expense, and not to advertising.
McFarland did not play upon the team until May, 1949. He was invited by Ewersman, the team coach, to become the catcher, and consented to do so. The injury to claimant occurred in the fifth or sixth game in which he had participated. The team practiced and played its games after work hours. Practice sessions were held at O'Fallon Park, and the games were usually played at Fairgrounds Park, both of which were public parks. The players furnished their own transportation to these parks. It is indicated that a few of the players would play catch upon the grounds of the employer during the lunch hour. The game in which claimant was injured was played upon the grounds of the American Fixture Company because the game had been postponed on account of rain, and the public park was not available on that date.
Claimant testified that he was employed as a press brake operator; that he received no pay for playing ball; that playing on the team was purely voluntary and no official of the company had ever talked with him about playing; that he received no concession for playing, and that if he didn't play it would not have cost him his job; that there was no admission charge to the games; that the manager and coach (fellow employees) had arranged the schedule of *346 games; that about 30 or 40 company employees attended each game; and that publicity concerning the team and games played was given in the monthly newspaper published by the company.
Our task, as previously indicated, is to determine whether the injury to the employee resulted from an accident arising out of and in the course of his employment. This is ordinarily considered a mixed question of law and fact; but where, as in this case, there is no dispute about the facts, the question becomes one of law only. Every case involving this problem must be decided upon its own particular facts and circumstances, and not by reference to some exact formula. Finley v. St. Louis Smelting & Refining Co., 361 Mo. 142, 233 S.W.2d 725. In approaching this problem we must bear in mind the rule that the compensation law must be liberally construed with a view to the public welfare, and that doubt as to the right of compensation is to be resolved in favor of the employee. But the cases also say that we are not authorized by this rule to allow a claim which lacks some of the essential elements required by the Act. Stout v. Sterling Aluminum Products Co., Mo.App., 213 S.W.2d 244. It has been said that, "an injury is received `in the course of the employment when it comes while the workman is doing the duty which he is employed to perform. It arises `out of the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." Mc-Nicol's Case, 215 Mass. 497, 102 N.E. 697, L.R.A.1916A, 306.
It is agreed that this is a case of first impression in Missouri under the precise facts detailed. We have considered a number of Missouri cases which, by analogy, shed light upon some phase of the controversy. In our effort to formulate and adopt the proper rule to be applied to recreational cases of this nature we have also considered many similar cases decided by the courts of other states, the more pertinent ones being hereinafter cited and discussed.
Claimant strongly relies upon the case of Conklin v. Kansas City Public Service Co., 226 Mo.App. 309, 41 S.W.2d 608, as indicating the trend of the decisions of this state in recreational cases. In that case it was held that the injury arose from activity that had become an incident to the employment when the employee sustained an injury upon being struck by a baseball bat while a spectator at a game. It appeared that for four years the employees had played indoor baseball in one of the employer's buildings during the lunch hour. Only employees played in and attended the games, and this activity was encouraged by the employer, as indicated by the fact that on one occasion a special game was played and all employees were paid full wages during their period of attendance. The Court held that since the injury arose out of a settled practice known to the employer, with which there was a causal relation between the injury and employment, the injury was compensable. While this case lends some support to the claimant's position, it can readily be seen that it is factually different from the case at bar and is not controlling here. Indeed, the Kansas City Court of Appeals recognized that it represented the extreme limit in the construction of the statute when it subsequently said: "In the opinion of the court, the opinion in the Conklin Case while sound and within the scope of the provisions for compensation, still to go further than in that case would be error." Dunnaway v. Stone & Webster Engineering Corp., 227 Mo.App. 1211, 61 S.W.2d 398, 400.
In the Dunnaway case the court held that the employee's death did not arise out of and in the course of employment when he accidentally drowned while fishing on the employer's barge (with the knowledge of employer) during the lunch hour. The court, however, did indicate as pure dictum that if the employer had fostered and encouraged its employees in fishing upon its *347 barge in order to obtain more efficient service as a result of such recreation, then there would have been reason for holding otherwise.
Wamhoff v. Wagner Electric Corp., 354 Mo. 711, 190 S.W.2d 915, 161 A.L.R. 1454, cited by the employee, is also easily distinguishable from the instant case. There, the employee was injured while operating a buffing machine, as he was employed to do, but was working at the time upon a toy automobile belonging to his daughter. It appeared that employees were permitted and encouraged in such activities, when not busy with company work, in order to develop new methods and thus improve the quality of their work. Under these circumstances, it was held that the injury was received in the course of the employment.
The employer has cited the case of Stout v. Sterling Aluminum Products Co., supra. It was ruled therein, by this court, that an employee sustaining an injury while attending a picnic held in a public park, sponsored by the employer and to which all employees were invited but not compelled to attend, on a day when the plant was closed and no one was paid, was not entitled to compensation, as such injury did not arise out of and in the course of his employment. We think that decision was sound, and the only real distinction we can see between it and the instant case is the fact that the picnic was held only once a year and the ball games were played throughout the season.
There is unquestionably some conflict of opinion upon this issue among the courts of other jurisdictions. The claimant has cited the cases of Le Bar v. Ewald Bros. Dairy, 217 Minn. 16, 13 N.W.2d 729; Fishman v. Lafayette Radio Corp., 275 App. Div. 876, 89 N.Y.S.2d 563; and Ott v. Industrial Commission, 83 Ohio App. 13, 82 N.E.2d 137. While the factual situations vary somewhat, these cases undoubtedly support the contention that injuries received under circumstances similar to those in the case at bar are compensable.
The Le Bar case is distinguishable from the instant case, however, in that it appears that the employer sponsored a number of teams in various athletic endeavors, both for employees and nonemployees. Apparently the employer, being in the general retail business, attached considerable value to the advertising which resulted from such sponsorship. The court held that the injury received by the employee in a baseball game arose out of his employment, the decision being based primarily upon the value of the advertising to the employer. In the case at bar, the car company manufactured railway and street cars. Obviously, the customers of the company were so few and widely scattered that the advertising value of the company name on the jerseys of a softball team would be infinitesimal.
The value of the advertising was also the basis of the decision allowing compensation in the Fishman case. In the Ott case, however, while advertising was mentioned, the principal ground for the decision allowing compensation was that the ball games promoted the health and general welfare of the employees, and cultivated a friendly relationship between the employees and the employer, all of which was said to be of value to the latter.
Cases from other states cited by the employer include Wilson v. General Motors Corp., 298 N.Y. 468, 84 N.E.2d 781; Pate v. Plymouth Mfg. Co., 198 S.C. 159, 17 S.E.2d 146; Industrial Commission v. Murphy, 102 Colo. 59, 76 P.2d 741, 115 A.L.R. 990; Leventhal v. Wright Aeronautical Corp., 51 A.2d 237, 25 N.J.Misc. 154; and Auerbach Co. v. Industrial Commission, 113 Utah 347, 195 P.2d 245. We deem it unnecessary to discuss these cases in detail, but consider it sufficient to state that, under factual situations similar to those in the instant case, the court in each case held that the injury did not arise out of and in the course of the employment of the claimant.
We have concluded in the case under consideration that the activity or *348 McFarland in playing upon the ball team cannot be considered as an incident to the employment, and that his injury did not arise out of and in the course of his employment. We deem this determination to be in accordance with the great weight of authority of the courts of other states, and to be based upon sound and logical principles.
It should be emphasized that claimant was not employed to play baseball, and such activity was certainly not an ordinary incident to his employment. These games were played after working hours, off the premises, and were the voluntary personal diversion of the men, entered into exclusively for their own recreation, and were without business advantage to the employer. The games were not initiated by the employer, in no way connected with its affairs, and not subject to its control in any manner. We do not consider it of important consequence that the employer acquiesced in, or contributed some financial assistance to, such activities. The slight support thus given by the employer should, as stated in Wilson v. General Motors Corporation, supra [298 N.Y. 468, 84 N.E.2d 784], "be accepted for what it really was, a gratuitous contribution to its employees' social and recreational life."
The relationship of master and servant must exist in order that any claim be compensable. When that relationship ceases to exist, either temporarily or permanently, the employer is no longer liable for accidental injuries to the employee. An essential element of the master-servant relationship is the right of the employer to control the means and manner of the service to be rendered. McQuerrey v. Smith St. John Mfg. Co., 240 Mo.App. 720, 216 S.W.2d 534. It is tacitly conceded in this case that the company had no right to supervise, control or direct the activities of the ball players, and made no effort to appropriate such right. We hold that since the employer had not right of control, the relationship of master and servant had temporarily ceased to exist at the time claimant was injured.
Throughout industry today there is a growing recognition by employers of the value of varied types of employee recreational activities, and employers have been liberal in their contributions to such projects. In many cases this has resulted in effecting a lower labor turnover, a more friendly employer-employee relationship, and has been a contribution to the social, moral and physical welfare of the individual employee.
Because of these benefits and the general increase in such activities the employee argues that, from a broad sociological viewpoint, we should seek to construe the statute in such a manner that injuries received by employees participating in such recreational programs would be compensable as being within the course of employment. In answer to this contention, we simply state that the compensation law was never intended to operate as accident insurance covering all accidental injuries wherever and whenever received by an employee. Also, to reach the result contended for by the employee, we would be required to adopt an unreasonable and illogical construction of the plain wording of the statute which, as stated by this court in Stout v. Sterling Aluminum Products Co., supra [213 S.W.2d 248], "would be legislation by judicial construction."
With further reference to the sociological implications suggested by claimant, it is our view that to hold that injuries such as the one received by McFarland arose out of and in the course of his employment would tend to destroy employer-employee recreational programs in this state. To so hold would be to serve notice upon all employers that if they concern themselves with contributing to the social and recreational life of their employees they shall do so under penalty of liability for every accident and injury occurring during such activities, regardless of the degree of remoteness from the employment. Under such circumstances, an employer, in his own *349 self-interest, would probably seek to escape this burden by withholding all further contributions and support.
The judgment of the circuit court should be affirmed. It is so ordered.
BENNICK, P. J., and ANDERSON, J., concur.