**C. Jane DAVIS, Plaintiff,**

v.

**UNIVERSITY OF DELAWARE, James R. Cunningham, John M. Hale, and Rita Quinlivan, Defendants.**

Superior Court of Delaware.

New Castle.

Sept. 6, 1967.

Frank J. Miller (of Walker, Miller & Wakefield), Wilmington, for plaintiff.

Alfred M. Isaacs (of Flanzer & Isaacs), Wilmington, for defendants.

STIFTEL, President Judge.

Plaintiff was injured in a fall on August 3, 1964, in the hall of a dormitory of the University of Delaware during a fire drill at 11 o'clock at night. She claims a horde of students came running down the hall at the sound of the fire alarm during a practice fire drill, some of whom struck her and made her lose her balance, causing her fall and substantial injuries. Defendant University of Delaware claims plaintiff was an employee of the University of Delaware at the time of the fall and has moved for summary judgment on this point. If defendant is right, plaintiff must seek her

remedy under our Workmen's Compensation Act.

Plaintiff, a woman of fifty, entered into a written contract of employment with the Department of Physical Education and Athletics of the University of Delaware on September 18, 1963. The employment period was from October 1, 1963, through August 31, 1964. She was employed as a visual consultant in the physical efficiency research program of the University at a salary of $1100 a year plus a grant from the Friends Foundation to pay costs of her tuition, room and board since she was also working for a doctor's degree. She had been engaged in this type of work before coming to the University and was sought by the University because of her knowledge and experience. Immediately before coming to the University, she had tested the vision of members of the Little Rock, Arkansas, baseball team; she had also worked for Bausch and Lomb. As a student at the University of Florida in 1964, she tested the vision of members of several major league baseball teams; she also tested teams in the Phillies organization down to its Class A teams.

About four or five days before the accident, plaintiff had moved into a new dormitory room and spent most of the time just "looking for stuff". She doesn't remember if she rendered any services to the University on the day of the accident, August 3, 1964. Nor does she recall whether she did any particular work for the University after she moved to her new room. However, before the move took place, she had been doing a statistical study. Normally, the majority of her statistical work was done in her dormitory room. Some was done in the field house, where she shared an office. There were times when she had to be in the field house because she had to work with other people.

Plaintiff's service to the University was to assist it in its research of baseball personnel performance, collecting data and making a statistical analysis of it. Her employment by the University was primary. Her schooling was secondary. It was supplied by the University as a part of the consideration for her services in its research program. This method of employment was used so as to obtain plaintiff's services at a lower cost to the University.

Plaintiff was not required specifically to live in the dormitory but she would not have been paid any additional amount for lodging if she lived off-campus. Thus no other residence was considered by either plaintiff or the University. Furthermore, the residency of Miss Davis on campus was extremely beneficial to the research program, primarily because it made her easily accessible and readily available for consultation with other members of the research staff.

Each case of this nature must be decided on its own particular facts; see Pyle v. Marshallton Consolidated School District, Supreme Court, Del., 213 A.2d 862, 864; Children's Bureau of Delaware v. Nissen, 3 Terry 209, 29 A.2d 603, 607; and whether plaintiff's injuries did arise out of and in the course of her employment is essentially a question of fact.[1] See Peter's Case, 345 Mass. 758, 186 N.E.2d 117.

Generally, when the contract of employment contemplates that the employee shall sleep upon the premises of the employer, the employee under such circumstances is considered to be performing services arising out of and in the course of his employment if he is injured while on the premises

---

1. Normally, in cases of this kind, the employee claims her injuries did "arise out of and in the course of her employment" within the meaning of the Workmen's Compensation Law. For example, see University of Denver v. Nemeth, 127 Colo. 385, 257 P.2d 423; In re Warren's Case, 326 Mass. 718, 97 N.E.2d 184; Van Horn v. Industrial Accident Commission, 219 Cal.App.2d 457, 33 Cal.Rptr. 169. This plaintiff wishes to escape the Workmen's Compensation Act by trying to excuse her activity from its operative effect. Cf. Carraway Methodist Hospital, Inc. v. Pitts, 256 Ala. 665, 57 So.2d 96.

of his employer. Holt Lumber Co., et al. v. Industrial Commission of Wisconsin, 168 Wis. 381, 170 N.W. 366, 367. This is especially true where the employee is not engaged in a purely personal mission; Allen v. D. D. Skousen Construction Co., 55 N.M. 1, 225 P.2d 452. Thus, if the employee is expressly required to live on the premises, his injuries while thereon are normally covered by the Compensation Act. Carroll v. Westport Sanitarium, 131 Conn. 334, 39 A.2d 892; Galvez v. Gold Coast Enterprises, 23 A.D.2d 600, 256 N.Y.S.2d 436. But, even though an employee is not expressly required to accept housing on the employer's premises, he may be impliedly required to do so in circumstances such as where housing is made a part of his compensation which is provided for in the contract. Truck Insurance Exchange v. Industrial Accident Commission, 27 Cal.2d 813, 167 P.2d 705; Chapman v. Kiamesha Concord, Inc., 15 A.D.2d 618, 222 N.Y.S.2d 435; Bass v. Mecklenburg County, 258 N.C. 226, 128 S.E.2d 570.

Plaintiff was not actually engaged in the specific work for which she was hired at the time of her accident. However, she was injured from a risk that was definitely attributable to the conditions under which she lived. Her presence in the dormitory required that she comply with the rules and regulations of the University regarding fire drills. She was not on a purely personal mission when the accident occurred, but was on a mission that was required of her as an employee-resident of the building to which she was assigned. Furthermore, her presence on the campus was part of her compensation. Her services to the University could not have been obtained without its commitment to her of free housing. This arrangement proved beneficial to the University since it sincerely desired her services. Also, her presence on campus had an additional benefit to the University because it made her available in a reasonably short time for consultations with personnel who were also connected with the project in which she was engaged.

These circumstances and others are such that require this Court to hold that plaintiff's injury did arise out of and in the course of her employment within the contemplation of the Workmen's Compensation Act. Employer liability and employee responsibility should be correlative terms. If the employee's duties to his or her employer are virtually continuous, then the employer's obligation to its employees should be of equal duration.

My decision herein requires that plaintiff's action against the University defendant be dismissed.

The case against the other defendants, also employees of the University of Delaware, is controlled by 19 Del.Code § 2363(a). See, also, Groves v. Marvel, Supreme Ct., Del., 213 A.2d 853. Plaintiff's case against them is also dismissed.

It is so ordered.