No. 16,819.

INDUSTRIAL COMMISSION ET AL. *v.* GOLDEN
CYCLE CORPORATION.
(246 P. [2d] 902)

Decided July 7, 1952.    Rehearing denied July 28, 1952.

Messrs. ZIEGLER & HOYT, for plaintiff in error Moffitt.

Mr. DUKE W. DUNBAR, Attorney General, Mr. H. LAWRENCE HINKLEY, Deputy, Mr. PETER L. DYE, Assistant, for plaintiff in error Industrial Commission.

Mr. THOMAS M. BURGESS, Mr. KENNETH W. GEDDES, for defendant in error.

*En Banc.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

PLAINTIFF in error is a claimant under the Workmen's Compensation Act for damages for injuries received about October 9, 1950, near Colorado Springs on the premises of the Pikes Peak Fuel Company, a division of defendant in error, The Golden Cycle Corporation.

It was a sand and gravel pit operation. The Daniels Sand Company had some arrangement with the Pikes Peak Fuel Company to truck sand and gravel from the pit as loaded by a power shovel to a washer on the same premises. On October 5, four days before the accident, claimant, seeking employment as a truck driver, was finally taken to the premises by Ray Daniels, one of the partners and manager of the Daniels Sand Company, and was there employed and put to work driving a truck from the excavating shovel to the sand pit after preliminary instructions and taking one trip with the then operator of the truck. Four days later, at the noon hour on a very hot day, when the operator of the excavating shovel stopped and went over to a shop to eat his lunch, claimant took his lunch from his truck and went over into the shade of an overhanging embankment and started to eat when the embankment caved off, partially covering him and throwing him against the power shovel, causing severe injuries to his head, which required skull operations and other like treatments, and resulting in one hundred per cent disability. He filed his claim with the Industrial Commission, but at the hearing his memory was so impaired that he could not remember any of the incidents leading up to, or concerning, the accident.

His claim for compensation was filed December 2, 1950 and the hearing was had on December 14 thereafter. The referee's finding and order, entered on March 29, 1951, was, in substance, to the effect that claimant was injured in the course of his employment, but had violated a safety rule. An award for maximum compensation reduced fifty per cent for safety-rule violation was made against the Pikes Peak Fuel Company, since the Daniels Sand Company did not carry workmen's compensation insurance. The employer filed petition for review on account of dissatisfaction with the award against it for fifty per cent compensation; the claimant filed his petition for review on account of the reduction of his compensation fifty per cent. The award of the referee of the

Industrial Commission was adopted and further petition by the employer was filed, but no further petition for review was filed by claimant. In its final award the Industrial Commission affirmed and approved its former award and in due course the employer brought this action in the district court of El Paso county, at Colorado Springs, Colorado, to set aside the award of the commission on May 28, 1951. On July 14, claimant filed answer and cross complaint asserting that the reduction of compensation for safety-rule violations is contrary to the law and the evidence. The employer and the commission filed motions to dismiss claimant's cross complaint because claimant had failed to comply with sections 97 and 98 of the Workmen's Compensation Act (sections 376 and 377, chapter 97, '35 C.S.A.). The trial court, after hearing on November 15, 1951, granted the motions to dismiss the cross complaint, and after having the matter under advisement found, on January 5, 1952, that the actual injury of claimant did not arise out of and in the course of his employment and set aside the award of the Industrial Commission, together with an order to the commission to vacate its award and dismiss the claim for compensation. To review the trial court's disposition of the matter, the proceeding is before us.

The circumstances present two questions, namely, did the injury arise out of and in the course of claimant's employment; and did claimant violate a safety rule? Since the early enactment of compensation laws, the industrial claimant has been bedeviled by the words, "arise out of and in the course of employment." On this question, here it is undisputed that claimant was eating his lunch on the employer's premises at the noon hour. This was during the employment. The vital question remains, can his injury, under the circumstances, be classed as "arising out of" his employment. It arises out of the employment if it is connected with the nature, conditions, operations or incidents of the employment. Courts generally have been liberal in protecting workers

during the noon hour if the injury occurs while the worker is doing what a man may reasonably do within a time during which he is employed and at a place where he may reasonably be at that time. The claimant here, in the matter of eating his lunch at the time designated for that purpose on the premises of the employer, was doing so in the course of his employment. As said in 1 Honnold on Workmen's Compensation, page 382, section 111, "* * * Consequently no break in the employment is caused by the mere fact that the workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade." Our court approved this statement in the case of *Ocean Accident & Guarantee Corporation v. Pallero,* 66 Colo. 190, 180 Pac. 95; and in the case of *Employers Mutual Ins. Co. v. Industrial Commission,* 76 Colo. 84, 230 Pac. 394, this court approved the following finding of the commission, "The claimant was injured during the noon hour. He came out of the mine where he was working and in attending to a call of nature, stopped under an old bank on the top of the main slope portal and was caught by a cave-in of this bank. His accident occurred on the employer's premises and during the claimant's working hours." With the foregoing expression of this court directly in point on the specific question here, we need not discuss this point further than to say that the finding of the referee, affirmed by the commission, that the injury arose out of and in the course of the employment, was correct, and that defendant in error's contention that claimant had left his employment is without merit.

The solution of the next question is more tedious. Did claimant violate a safety rule? The commission, adopting the finding of its referee, answered this in the affirmative, and, of course, we generally are bound by the findings of the trier of facts, and in this instance, we

believe the evidence amply supports the finding on this point.

█ It is generally held that oral warnings, prohibitions and directions meet the safety requirement for the protection of both employer and employee if given by someone generally in authority and known to be heard and understood by the employee. Aside from any warning or directions that appear to have been given claimant concerning the liklihood of the overhang on the excavation caving in at any time, it is undisputed that claimant was an adult; there is no intimation that he was not possessed of all of his natural senses; that he witnessed the cave-in of the overhanging embankment numbers of times during his four-day employment; and it will be presumed that he had full realization of that kind of occurrence whenever there was a projecting of overhang above the arc created by the excavating shovel. Of course, claimant is deprived of the benefit of his best witness, that being himself, because of the nature of the injury to his head, which affected his memory and he was wholly unable to testify as to any facts leading up to, or in connection with, the accident. We have the testimony of fellow workmen and the employer-manager to the effect that claimant had numerous warnings of the dangerous nature of the embankment. It seemed to be a quickly formed habit of claimant to get out of his truck while it was being loaded and watch the mechanical operations of the excavating shovel, and while he was doing so, he placed himself in dangerous positions. George Bilbrey, the shovel operator, testified that he had warned him to not get between the bank and the shovel. Ray Liverett, a fellow employee engaged in the same employment as claimant, that of driving a truck, testified that Daniels, the manager of the employer operations, had warned him and claimant to stay clear of the banks; he further testified that on the days previous to the accident when claimant just seemed to stand around the banks and want to drink a bottle of pop under the bank,

that he told him to get out from under the bank, that it was liable to come down, and claimant just laughed at him; that he had warned claimant three or four times about walking between the shovel and the embankment; and that at the time of the accident, he and claimant knocked off for dinner and Moffitt (claimant) got his lunch out of the truck and sat down; that he got his lunch and sat down about fifteen feet from Moffitt, looked up at the bank and told him to get out from under there, "that is liable to come out at any time; claimant said, "No, it ain't going to come down," and called him a chicken because he did not get back up in the shade; he then opened his lunch bucket and offered a sandwich, and at that instant the bank was coming down on Moffitt.

Ray Daniels, the employer-partnership manager, testified that at the time of the employment, he told claimant to stay out from under the bank regardless of where the shovel was; that his business was driving the truck and he had no business under there; he further testified that he pointed out to claimant a dent in the shovel where an embankment had come down and nearly covered up the shovel.

██ With this undisputed testimony, it is clear that claimant had warning of the dangerous condition, if he needed warning at all after having observed the frequent cave-ins each day during his previous days of employment, and was made aware of the danger. There was no notice posted prohibiting workmen from going under the bank, and, indeed, such was not necessary because the danger was obvious and a common-sense rule of safety was in effect. While workmen's compensation laws are construed liberally in favor of the workmen, they are not to be so narrowly construed as to fasten full liability upon an employer when the worker becomes careless or indifferent in his conduct while acting within his employment. The operator of a saw mill surely would not be held to liability for failure to post a notice reading,

"Keep your hands out of the buzz saw," neither will the worker's rights be entirely sacrificed by charging him with an assumption of risk under some other name. The framers of our Workmen's Compensation Act, particularly section 362, chapter 97, '35 C.S.A., anticipated carelessness of employees within the scope of their employment and provided: "The compensation provided for herein shall be reduced fifty per cent * * * Where injury results from the employee's wilful failure to obey any reasonable rule adopted by the employer for the safety of the employee." When, as here, claimant did the thing frequently warned against for his safety, and, assuming that as an ordinary prudent person, he knew the danger, then it must be said that he wilfully placed himself in danger because there was no occasion for his action to be without deliberation, and it was not the result of a sudden impulse. Claimant contends that there was no posted rule and he was not forbidden to go under the bank. The warnings, numerously given, coupled with the presumption of common sense on the part of claimant obviated the necessity of the posting of a safety rule concerning the existing condition. Violation of a safety rule does not bar recovery, but the amount of the recovery is based upon the circumstances under which a safety rule is violated, and in this instance, the finding of the commission that the compensation be reduced fifty per cent was proper and supported by the evidence.

The judgment of the district court reversing the award of the commission and directing that the claim be dismissed was erroneous, and its judgment is reversed and the cause remanded with directions to sustain the award of the commission.

Mr. Chief Justice Jackson not participating.