No. 19,145.

JAMES R. DIVELBISS *v.* INDUSTRIAL COMMISSION OF COLORADO, ET AL.
(344 P. [2d] 1084)

Decided October 19, 1959. Rehearing denied November 9, 1959.

Messrs. GRAHAM & SCHEUNEMANN, for plaintiff in error.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. PETER L. DYE, Assistant, for defendant in error Industrial Commission of Colorado.

Messrs. TIPPIT, HASKELL & WELBORN, Mr. ELMER P. COGBURN, for defendant in error Colorado Fuel and Iron Corporation.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

PLAINTIFF in error filed a claim for workmen's compensation before the Industrial Commission. Hearing was had before a Commission referee who denied the claim. The findings of the referee were adopted by the Commission, and subsequently the district court entered judgment affirming the Commission. Claimant seeks review and reversal contending that the court erred in concluding that his injury did not arise "out of and in the course of the employment."

The facts are undisputed and show that claimant, who on July 24, 1957, was 53 years of age, was employed by The Colorado Fuel and Iron Corporation as a first

helper on the open hearth furnace. On the day of the injury he was working the 3:00 P.M. to eleven shift, but by long established custom he arrived at the plant 50 minutes early and then punched in on the time clock. He then relieved the helper on the preceding shift about 30 minutes early. In turn, the next shift relieved him 30 minutes early. Claimant then proceeded to the showers on the premises, and while he was stepping into the shower slipped and fell on the base of his spine suffering fractures and injuries.

The open hearth employees ordinarily go to the change room after they have been relieved, where they change out of their working clothes and either go to the shower room where they take a shower before changing into their street clothes, or to a wash room where there are basins for washing their hands and faces. Claimant testified that everybody in the open hearth takes a shower except a very few who simply wash their faces and hands. Claimant testified concerning the necessity for taking a shower as follows:

"Q. Is there anything about your work as a first helper that makes it necessary to take a shower? A. Well, I certainly think there is and the majority of them do, it is dense heat you work in, that open hearth furnace and if I recall that night, I finished tapping the heat just before I left and was all wet, that dolamite dust is very dangerous to your skin if it is left on and then, I consider a man's health, if a fellow went out into the weather wet and dusty he had a very good chance of catching pneumonia, I think it is very important that a fellow cleans up before he goes home, there is no sense in going down as dirty as you are without taking a shower. Q. Is the shower room on the company premises? A. Yes, sir. Q. How large a shower room is it? A. It is one of the best in the country, the last new one they built, I should say it is fourteen showers in all and there is twelve above for the laborers."

The single issue for determination is whether an em-

ployee who is injured while taking a shower bath following relief from his work but before the completion of his shift — before he has "punched out" — is entitled to compensation where it appears that he has worked in dense heat and dolamite dust and where it appears that the shower is provided by the employer on its premises but that taking a shower is optional. If it can be said that the employee was in law "performing services arising out of and in the course of his employment" the injury is compensable — otherwise it is not.

The Industrial Commission followed the Court's decision in *Industrial Commission v. Rocky Mountain Fuel Co.,* 107 Colo. 226, 110 P. (2d) 654, which decision resulted in denial of compensation to a coal miner who was injured under similar circumstances. It there appeared that although the employer furnished the shower bath facilities, the employee paid a fee for their use; that the employee's shift had ended, and that he was free to go home — that he was under no compulsion to use either the washing or shower facilities.

Other Colorado cases have construed the clause "performing services arising out of and in the course of his employment," C.R.S. 1953, 81-13-2, less restrictively than the *Rocky Mountain Fuel Co.* case. Thus *State Compensation Fund. v. Industrial Commission,* 98 Colo. 563, 58 P. (2d) 759, recognized the claim growing out of death of an employee while sleeping in a company bunk house. See also *Employers Mutual v. Commission,* 76 Colo. 84, 230 Pac. 394, which recognized the right where the employee was injured while attending a call of nature. An injury while eating lunch on the premises of the employer was held compensable in *Industrial Commission v. Golden Cycle,* 126 Colo. 68, 246 P. (2d) 902. It was there said:

" * * * It arises out of the employment if it is connected with the nature, conditions, operations or incidents of the employment. * * * "

See also *Industrial Commission, et al. v. Hayden Coal*

*Co.,* 113 Colo. 62, 155 P. (2d) 158, where the claimant was allowed to recover even though he was injured prior to going on duty. He stumbled and fell while leaving the washroom after he had changed his clothes and was at the time of the injury walking toward his station.

In *University of Denver, et al. v. Nemeth, et al.,* 127 Colo. 385, 257 P. (2d) 423, the claimant, although injured while playing football, was held entitled to compensation. The Court recognized that the claimant was required to play football in order to hold his job. The Court commented on the question of proximity of the activity to the work which claimant had been employed to perform, and approved a test of "incident to the employment."

1 *Larson's Workmen's Compensation Law,* p. 313, Sec. 21.60, *Preparatory Acts,* declares:

"The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts, such as washing or changing his clothes. The rule is not limited to activities that are absolutely necessary; it is sufficient if they can be said to be reasonably incidental to the work."

■ Larson also points out that injuries which occur while washing one's hands before going home has ordinarily been held to be incidental to the employment. He then discusses the cases which deal with bathing and criticizes the *Rocky Mountain Fuel Co.* case as follows: (Sec. 21.63)

"There has been a little reluctance, however, to extend this principle to shower baths. Several awards have been made, but in two or three cases courts have stopped short of showerbath injuries, giving various reasons. In a Colorado case, for example, a miner, who was taking a shower in the bath house maintained by the employer before changing his clothes, slipped on a piece of soap. The court was quite prepared to concede that he would

have been in the course of his employment while changing his clothes, but could not see that taking a shower was a reasonably necessary preparation for leaving for home. Of course, there are many variables in such a case; perhaps it was an extremely clean mine, or perhaps the court's ideas of personal hygiene were not very exacting; but it seems reasonable to suggest that if the need for showers was great enough to induce the employer to install them in the first place, the use of them by miners before changing their clothes might be thought reasonably incidental to the work. * * * "

■ It is urged by the claimant that the present case is distinguishable from the *Rocky Mountain Fuel* case in that the evidence here establishes the necessity for bathing after completion of a shift as a helper on an open hearth furnace in a steel mill, whereas evidence was lacking on this point in the *Rocky Mountain Fuel* case. Although there are superficial differences between the present case and the *Rocky Mountain Fuel* case, it appears to us that the two fact situations are substantially similar and that a holding allowing compensation here would not be fully reconcilable with the *Rocky Mountain Fuel* case. That decision is out of harmony with the present trend of cases construing the phrase "services performed out of and in the course of the employment," and insofar as that decision is in conflict with the present one it should be and it is hereby overruled. The nature of the employment in the case here presented makes bathing reasonably incidental to the employment itself. The fact that the employer has provided these showers and the fact that substantially all of the employees find it necessary to use them, constitutes persuasive evidence leading to the conclusion that the shower facilities provided are something more than a contribution to the convenience of the employees. The health of the employee is of interest to the employer and the inference that the employer was not providing for the comfort and pleasure of the employee when it in-

stalled these extensive shower facilities is a fair one. The employer's interest was actually here served. The evidence also established that the shower was part of a reasonably necessary preparation for the employee leaving the company premises for his home.

We conclude, therefore, that the accident here involved is within the class of cases which arise out of and in the course of the employment.

The judgment of the trial court is reversed and the cause is remanded with instructions to remand the case to the Commission with directions to enter an appropriate award consistent with the views expressed herein.

MR. JUSTICE HALL dissenting and MR. CHIEF JUSTICE KNAUSS not participating.

MR. JUSTICE HALL dissenting:

I respectfully dissent from the majority opinion and in so doing point out what I consider salient facts disclosed by the record and not referred to in the majority opinion.

Claimant was not working on an hourly basis, but on a tonnage basis:

"Q. Now you are paid on the tonnage produced at your open hearth furnace? A. Yes sir. Q. Over a twenty-four hour period? A. Yes. Q. So your pay is not based on how long you were on the job? A. No. Q. In other words when you leave, are released (relieved ?) at about half an hour before the end of the shift you are through? A. Yes, with the work."

In my opinion the record does not disclose that "substantially all of the employees find it *necessary* to use them (showers)," nor "the shower is part of a reasonably *necessary* preparation for the employees leaving the company premises for going home." There is no evidence of necessity — the evidence, undisputed, is:

"Q. It is entirely up to your own *personal taste* whether you want to take a shower or wash up in the

wash basin? (Emphasis supplied.) A. Yes, I guess it would be, but it is very few of them that wash their hands and faces after working there for eight hours and a lot of them are not in a position to be as hot and sweaty as we are."

Claimant's employment terminated at 10:20; he could have "punched out" at 10:20; his injuries occurred between 10:25 and 10:30.

"Q. Instead of leaving at eleven, what time do you actually leave? A. We are allowed forty minutes, we can punch out at twenty minutes after the hour (10:20)."

The act provides for compensation when an employee is injured while (1) performing services (2) arising out of (3) and in the course of his employment.

1. I fail to see by what reasoning it can be said that claimant at the time of his injuries was performing services (for the employer). He had prior to 10:20 been performing services; he had been doing work assigned to him by the employer, productive work, work supervised and controlled by the employer, and for which work he was compensated on a tonnage basis; at 10:20 he had ceased work; his work was taken over by another, and anything claimant did after that was of his own choosing, not subject to control by the employer and in conformity with his "own personal taste."

At the moment claimant fell, another employee was doing the work; claimant had left at 10:20 and had this other employee been injured when claimant fell, there is no question he would be entitled to compensation and, under the majority opinion, we would have two persons compensated when there was only one job.

By way of speculation, let us assume that claimant instead of seeking compensation had brought suit against the Colorado Fuel and Iron Company and had alleged that at the time of the injury he was an invitee and his injuries were caused by the negligence of the C. F. & I., and the C. F. & I. had alleged as a defense that the in-

juries suffered arose out of and during the course of his employment and therefor were compensable but could not be made the basis of a tort action. Would this court under such circumstances relegate the injured employee to his remedies under the compensation statutes? I doubt it.

2. Further, his injuries did not arise "out of his employment" as the first helper on an open hearth furnace. The accident occurred, not at the furnace, but at a bathhouse; taking a bath had nothing to do with tending the furnace — the most that can be said is that his work made a bath desirable; likewise it made a rest, a refreshing beer, food and sleep desirable. I observe not only a distinction, but a marked difference between an employee engaged in productive, supervised work for pay and one who has finished his day's toil and, in accordance with his tastes, is enjoying a bath for free. The majority treats the two as equals for the purposes of the compensation laws.

3. Lastly, his injuries did not arise in "the course of his employment," but rather after his employment had ceased, after he had been relieved of his duties, no longer subject to control, and after he became a free agent to take a bath or follow such other pursuits as best served his tastes.

Cases referred to by the majority as indicative of "the present trend" of decisions do not, in my opinion, sanction the conclusion reached in this case.

In *State Fund v. Industrial Com.*, 98 Colo. 563, 58 P. (2d) 759, the employee was at the place where he was obliged to be. The court said:

"The general rule is admittedly stated in 71 C. J., p. 695, §437. The particular fact which it is contended excludes this case from its operation is that while deceased was obliged, as a condition of his employment to sleep in the bunkhouse, board and room there were not *furnished* by the company, but he was charged $1.25 per day therefor.

"The commission found, and it is undisputed, that deceased and his companions were obliged to room and board at the bunkhouse as a condition of their employment. This was not only a company regulation, but a matter of stern necessity enforced by the location of the company's mine and the total absence of other available accommodations. The rule above cited states that *the test is whether or not the workman is given a choice in the matter.* Nerim had none. * * *." (Emphasis supplied.)

It cannot be said that Divelbiss had no choice — it was his own personal taste that led him to take a bath.

In *Employers Co. v. Industrial Com.,* 76 Colo. 84, 230 Pac. 394, compensation was allowed on the finding of the commission that the injuries occurred "during claimant's working hours." In the case at bar, the evidence is conclusive and the commission so found that the injuries occurred outside of and after his working hours.

In *Industrial Com. v. Golden Corp.,* 126 Colo. 68, 246 P. (2d) 902, the employee was injured while eating his lunch on employer's premises. Here the court held that the injuries occurred during the time of the employment, and this might well be true for it does not appear whether the claimant was employed on an hourly, daily or monthly basis, and the reason he was eating his lunch and not working was the fact that the power shovel operator, who loaded his truck, went off to lunch.

In *Industrial Com. v. Hayden Co.,* 113 Colo. 62, 155 P. (2d) 158, the claimant was required to be on the premises and to get instructions for his work from the superintendent between 6:30 and 7:00 A.M. The injuries occurred at 6:45 as claimant was hurrying to get his check preparatory to getting his instructions before entering the mine. The court said:

"Applying the test to the case at bar, we think it is fair to say that when the employee had arrived on the premises of his employer and 'was hurrying down the pit car track' to the check room to get his mine check

and lamp, *in direct and immediate response to the employer's warning whistle, that he no longer had any choice in the matter.* It required forty minutes for him to reach his place in the mine, and it was in the employer's interest that he get to his work on time. We think this constitutes performing service within the meaning of the act." (Emphasis supplied.)

Certainly Divelbiss had a choice and the employer was making no demands.

In the majority opinion, it is stated:

"The employer's interest was actually served here."

Understandably it is not pointed out in what way the employer's interest is being served, and my imaginative powers fail to produce a clue. I doubt if the benefits to the employer of the employee taking a bath is reflected in its earnings and assets statement.

In my opinion the judgment should be affirmed.