Leroy STEWART, Plaintiff-Appellant,

v.

UNITED STATES of America, Gary D. Nuss, and Rockwell International Corporation, a Delaware Corporation, Defendants-Appellees.

No. 80–1329.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1982.

Rehearing Pending.

Richard M. Borchers, Westminster, Colo. (John E. Joslin, Kansas City, Mo., was on the brief), for plaintiff-appellant.

James E. Elliott, Jr., Denver, Colo. (Elliott, Martinez & Allman, Denver, Colo., was on the brief), for defendants-appellees Rockwell Inter. Corp. and Gary D. Nuss.

Jake J. Chavez, Asst. U.S. Atty., Denver, Colo. (Joseph F. Dolan, U.S. Atty. and Donald M. Hoerl, Asst. U.S. Atty., Denver, Colo., and Jan Elizabeth Mitchell, U.S. Dept. of Energy, Albuquerque, N.M., were on the brief), for defendant-appellee United States of America.

Before SETH, Chief Judge, and HOLLOWAY and McKAY, Circuit Judges.

HOLLOWAY, Circuit Judge.

In this suit brought against the United States under the Federal Tort Claims Act (FTCA), plaintiff-appellant Leroy Stewart appeals a dismissal as to the defendant United States and a summary judgment granted for defendants Gary Nuss (Nuss) and Rockwell International Corporation (Rockwell), also named as defendants. Plaintiff seeks damages for personal injuries incurred in a parking lot accident at the Rocky Flats nuclear weapons facility in Colorado, owned by United States and operated by Rockwell, charging negligence against all defendants. The injury is alleged to have occurred on May 20, 1976, when plaintiff was struck, while exiting his car in the parking lot on arrival for work, by a Government vehicle driven by Nuss, who was on a security patrol.

I

Plaintiff originally sought relief solely against the United States under the FTCA, 28 U.S.C. § 2671 *et seq.* and 28 U.S.C.

§ 1346(b). His amended complaint also named Rockwell and Nuss as defendants. The amended complaint asserted jurisdiction pursuant to the FTCA. It also claimed diversity jurisdiction as to Rockwell and pendent jurisdiction as to Nuss. Defendants have not challenged subject matter jurisdiction as to any of the claims except by a formal denial earlier in the answer of Rockwell and Nuss of pendent jurisdiction as to Nuss. (*See* note 2, *infra*).

However as we must, we note that there is a question as to whether pendent jurisdiction is proper as to a non-diverse party such as Nuss. *See, e.g., Ayala v. United States,* 550 F.2d 1196 (9th Cir.). Moreover, we have also noted, *sua sponte,* that the amended complaint failed to aver the principal place of business of Rockwell, which prevented reliance on diversity jurisdiction as to the corporation at that point. *American Motorists Ins. Co. v. American Employers' Ins. Co.,* 600 F.2d 15 (5th Cir.); *Walsh v. International Precious Metals Corp.,* 510 F.Supp. 867, 873 (D.Utah); see Fed.R.Civ. Proc., 8(a)(1) (requiring a short and plain statement of grounds of jurisdiction). We requested supplemental briefing from the parties on the question of whether there was proper subject matter jurisdiction of the claims against Rockwell and Nuss. The supplemental brief of Rockwell and Nuss noted that Rockwell's diversity of citizenship was never questioned below and suggested that Rockwell be treated as diverse. Rockwell's supplemental brief included an affidavit stating that its principal place of business is in Pennsylvania. The Government submitted a statement on jurisdiction which adopted the position of Rockwell and Nuss. On consideration of the supplemental briefs, the affidavit and the Government's statement, we will treat the matter as an unopposed motion to amend the complaint to cure the defective diversity allegation as to Rockwell, which we grant. 28 U.S.C.A. § 1653; 3 Moore's Federal Practice ¶ 15.11 (2d ed. 1982).

The question remains whether there is proper subject matter jurisdiction of the claim against Nuss as a matter of pendent jurisdiction. By their supplemental statements on jurisdiction, filed by the parties at the direction of the court, all the parties take the position that the district court properly exercised pendent jurisdiction over Nuss. The question is, however, "subtle and complex," *Aldinger v. Howard,* 427 U.S. 1, 2, 96 S.Ct. 2413, 2414, 49 L.Ed.2d 276, and we feel we must note and carefully decide it because it touches on constitutional and statutory foundations of jurisdiction.

Jurisdiction of the claim as to Nuss involves more than just the assertion of two claims, one federal and one non-federal, in litigation between the same parties plaintiff and defendant. *E.g. Hurn v. Oursler,* 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. The assertion of a separate claim arising out of the same operative facts concerning conduct of the same parties, but as a pendent claim against an added party, implicates the so-called "pendent party" problem where jurisdiction was held lacking as to the pendent party in *Ayala v. United States,* 550 F.2d 1196 (9th Cir.), in an FTCA case. The problem involves both Article III constitutional power and the statutory basis for such jurisdiction. *See Aldinger v. Howard,* 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276.

We note that plaintiff's complaint is based on the single accident in the Rocky Flats parking lot. Further, the claim against the United States under the FTCA properly invoked the subject matter jurisdiction conferred by that Act exclusively on the federal district courts. And we are satisfied that the claim asserted under the FTCA has sufficient substance so that it was proper to invoke that jurisdictional grant. To these circumstances we apply the guidelines laid down in *Gibbs* which are instructive here in deciding the pendent party question:

Pendent jurisdiction, in the sense of judicial *power,* exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under

their Authority ...," U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case." The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. *Levering & Garrigues Co. v. Morrin,* 289 U.S. 103 [53 S.Ct. 549, 77 L.Ed. 1062]. The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole. 383 U.S. at 725, 86 S.Ct. at 1138. (emphases in original) (footnotes omitted).

We are persuaded that under these concepts subject matter jurisdiction of the claim against Nuss exists, pendent to that of the claim under the FTCA against the Government, in accord with the constraints of Article III. *Dick Meyers Towing Service, Inc. v. United States,* 577 F.2d 1023, 1024 n. 1 (5th Cir.), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455; *Johnston, et al., v. United States, et al.,* 546 F.Supp. 879, (D.Kan.); *Dumansky v. United States,* 486 F.Supp. 1078, 1086–89 (D.N.J.); *Pearce v. United States,* 450 F.Supp. 613, 619 (D.Kan.); *Maltais v. United States,* 439 F.Supp. 540, 547 (N.D.N.Y.); *cf. Florida East Coast Railway Co. v. United States,* 519 F.2d 1184 (5th Cir.); *Transok Pipeline Co. v. Darks,* 565 F.2d 1150, 1154–55 (10th Cir.), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388; *State of New Mexico v. Molybdenum Corp. of America,* 570 F.2d 1364, 1367 (10th Cir.). *Contra, Kack v. United States,* 570 F.2d 754 (8th Cir.); *Ayala v. United States,* 550 F.2d 1196 (9th Cir.),

*cert. dismissed per stip.,* 435 U.S. 982, 98 S.Ct. 1635, 56 L.Ed.2d 76; *Falk v. United States,* 264 F.2d 238 (6th Cir.). While *Aldinger* rejected pendent party jurisdiction in the context of a claim principally asserted under § 1983, the Court noted that different considerations apply where there is a case like this one under the FTCA which confers *exclusive* jurisdiction on the federal courts [1]:

> Other statutory grants and other alignments of parties and claims might call for a different result. When the grant of jurisdiction to a federal court is exclusive, for example, as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346, the argument of judicial economy and convenience can be coupled with the additional argument that *only* in a federal court may all of the claims be tried together....

427 U.S. at 18, 96 S.Ct. at 2422 (emphasis in original).

Moreover, we find no congressional disapproval of the exercise of such pendent party jurisdiction in the FTCA. The waiver of immunity, granting jurisdiction to the federal district courts of such tort suits against the Government, was made in "sweeping language." *United States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523. Moreover the grant of jurisdiction was made exclusively to the federal courts. Thus there is no indication that Congress declined to extend federal jurisdiction over such a pendent party as was the case in *Aldinger. See* 427 U.S. at 16–19, 96 S.Ct. at 2421–23.

We hold, therefore, that subject matter jurisdiction in the district court existed of the claim against Nuss as one over which the district court properly exercised jurisdiction, pendent to the claim against the

---

1. In *Aldinger* the Court quoted an observation from *Kenrose Mfg. Co. v. Fred Whitaker Co.,* 512 F.2d 890, 894 (4th Cir.), that the arguments for federal pendent jurisdiction are not the only consideration to be taken into account; that especially is so where the efficiency the plaintiff seeks is available in the state courts. 427 U.S. at 15, 96 S.Ct. at 2420. In the instant case, of course, such efficiency is unavailable because the FTCA vests exclusive jurisdiction of the claim against the Government in the federal courts.

Government under the FTCA over which the federal court has exclusive jurisdiction.[2]

## II

Most of the facts concerning the accident and the workmen's compensation defenses are undisputed and can be stated briefly.

On the morning of May 20, 1976, plaintiff left for work and picked up two co-employees who shared a car pool with him. Plaintiff's employment at this time was as a probe and cable fabricator. By rotating the driving duties, plaintiff drove his car approximately every third day. The routine of the car pool was to arrive at the Rocky Flats plant in time to have coffee and change into work clothing before the beginning of their 7:30 a.m. shift.

Plaintiff was not being paid for work at the time of the accident and pay was not to start until 7:30 a.m. As the riders approached the plant, they passed through a security checkpoint where they displayed their identification badges to security personnel. They continued to Parking Lot No. 50 where they were to leave the car and pass a final security checkpoint before entering Building No. 750 to change clothes. Parking places were unassigned in the parking lot, which was used because it was the most convenient. The lot was used by persons other than plant employees.

They parked in Lot No. 50. Plaintiff's riders left the car and he stepped out of the automobile. As he reached back into the car for his lunch pail, he was crushed against the car by a Government vehicle. This occurred at about 7:06 or 7:08 a.m.[3] Plaintiff suffered compound fractures of both ankles, a tibia plato fracture of the right leg, and a deep laceration of the upper left thigh about twelve inches long. In August 1979 plaintiff's right leg was ampu-

tated, a procedure necessitated by osteomyelitis. His medical expenses have exceeded $75,000.

Defendant Gary Nuss was the driver of the Government vehicle. He was employed in the Rockwell Plant Protection Department and was performing his regular guard duties near the end of his midnight shift. An investigation revealed that he had fallen asleep at the wheel of the vehicle. The parties agree that Nuss was acting within the course and scope of his employment at the time of the accident.

Four days after the accident (May 24, 1976), Rockwell filed an accident report with the Colorado Division of Labor (the Division). In June 1976 Traveler's Insurance Company (Traveler's), Rockwell's workmen's compensation carrier, submitted an admission of liability for the accident to the Division. In October and November of that year, plaintiff lodged an accidental injury claim for compensation and an "Election of Remedies" with the Division, electing workmen's compensation coverage. He received benefits from both Traveler's and Social Security.

The Rocky Flats installation is situated on a 6500 acre tract owned by United States in fee simple for the sole purpose of fabricating nuclear weapons parts. (*United States v. State of Colorado*, 460 F.Supp. 1184, 1186 (D.Colo.); II R. 53). Though the actual operation of the plant is accomplished through private companies under management contracts, no work on behalf of any private entities is undertaken there. Since June 1975 the plant has been operated under a management contract with Rockwell, which is charged with managing, staffing, maintaining, and operating the

---

**2.** While there is no express statement in our record that the district court concluded it should exercise its discretion to entertain the claim against Nuss, that determination is implicit in the disposition of the claim against him on the merits since the complaint alleged only pendent jurisdiction as to Nuss. The amended complaint alleged that "[j]urisdiction over defendant NUSS is pendent to the jurisdiction over the other defendants." (I R. 1). The Government's answer stated that such conclu-

sions of law need not be admitted or denied. (I R. 6). The answer of Rockwell and Nuss stated that they were without sufficient knowledge and information to form a belief as to this allegation and therefore denied it. (I R. 9).

**3.** Plaintiff's deposition testimony indicates that he arrived at Lot No. 50 at 7:08 a.m. (VII R. 15). A Rockwell investigation found that the accident occurred at 7:06 a.m. (III R. 333).

plant. (II R. 67, 70). Under the management contract the Department of Energy provides all funds to sustain the operation. No money or property of Rockwell is used. The contract with Rockwell provides that persons employed by Rockwell shall not be deemed employees of the Government. (II R. 70).

Under Rockwell's contract with United States, Rockwell is required to maintain workmen's compensation insurance for the benefit of its employees. (II R. 213, 233). The contract provides that Rockwell will receive an annual negotiated fee for its management services in addition to reimbursement for its operating expenses, including the cost of workmen's compensation insurance. (II R. 77, 82).

Plaintiff's complaint averred that the Government, Rockwell and Nuss were all liable for his injuries due to their negligence. After discovery, Nuss and Rockwell filed motions for summary judgment claiming the Colorado Workmen's Compensation Act (Act) barred plaintiff's common law remedy. The Government also sought summary judgment, arguing that its status as a "statutory employer" under the Act freed it of liability on such a claim.

The district court granted summary judgment for Nuss and Rockwell, holding that the Act constituted plaintiff's exclusive remedy. At a subsequent status conference the Government made an oral motion to dismiss for failure to state a claim on which relief can be granted, Fed.R.Civ.P., 12(b)(6). The motion was granted based on the "statutory employer" argument and this timely appeal followed from all these adverse rulings.[4]

Plaintiff urges several grounds for reversal of the summary judgments and dismissal. He contends that under Colorado law injuries incurred by an employee while travelling to and from work are not compensable under the Act, that plaintiff's common law remedy is not foreclosed, and that material factual issues concerning applicability of the Act prevent summary judgment. Plaintiff also maintains that dismissal as to the United States was improper if the Government, and not Rockwell, was the actual employer. He reasons that, in this scenario, workmen's compensation coverage secured by an employee of the United States (Rockwell) will not insulate the United States from suit. Further, the employer United States must make an election to be covered by the Act, which plaintiff says it has not done. Plaintiff also argues that the Act does not apply to territory owned in fee simple by the United States.

Plaintiff further says that Rockwell improperly influenced his initial decision to file a claim for workmen's compensation benefits and forego a tort action. Finally, plaintiff claims that the district court's order is defective for failing to satisfy specificity requirements of Rules 56 and 52, Federal Rules of Civil Procedure.

### III

Plaintiff first contends that the district court erroneously concluded that his injury arose "out of and in the course of employment" as required by the Colorado Workmen's Compensation Act.[5] Plaintiff argues

---

**4.** Though both counsel for the Government and the court discussed the motion as one brought under Rule 12(b)(6), Fed.R.Civ.P., we note that matters outside the pleadings were presented and relied upon in disposition of the motion. Therefore, we treat the motion as a "speaking motion," or motion for summary judgment, as provided in Rule 12(b), Fed.R.Civ.P.

**5.** C.R.S.1973 § 8–52–102 states:
  (1) The right to the compensation provided for in [the Act] in lieu of any other liability to any person for any personal injury or death resulting therefrom, shall obtain in all cases where the following conditions occur:

  (a) Where, at the time of the injury, both employer and employee are subject to the provisions of said articles and where the employer has complied with the provisions thereof regarding insurance;
  (b) Where, at the time of the injury, the employee is performing service arising out of and in the course of his employment;
  (c) *Where the injury or death is proximately caused by an injury or occupational disease arising out of and in the course of his employment and is not intentionally self-inflicted.* (Emphasis added).

that this incorrect conclusion resulted in the equally erroneous holding that the Act barred suit against defendants Rockwell and Nuss by virtue of its exclusivity provisions.[6]

Plaintiff correctly notes that, in general, injuries incurred going to and from work are not within the ambit of the Act. *Rogers v. Industrial Commission,* 40 Colo.App. 313, 574 P.2d 116. Absent some special circumstances, plaintiff urges, a parking lot injury sustained before work hours is not causally related to employment as contemplated by the Act.

In factual support of his contention that the Act is inapplicable, plaintiff observes that: (1) he was only exiting his car and had made no move toward Building No. 750; (2) he was not paid for any time spent changing clothes prior to starting time, though he was paid for time spent changing in the afternoon; (3) before work commenced he had to clear a final security check; (4) the parking lot was open to persons other than Rockwell employees such as repairmen and spouses picking up employees; (5) use of the lot was not mandatory, and (6) parking spaces within the lot were unassigned. (Appellant's Opening Brief, pp. 10–11). These facts indicate, he maintains, that he was still in transit to his workplace at the time of the accident and no causal connection linked his injury to his employment.

The totality of the circumstances must be examined in each case to determine if there is a sufficient nexus between employment and injury to say that the accident occurred within the scope of the employment. *City & County of Denver School Dist. No. 1 v. Industrial Comm.,* 196 Colo. 131, 581 P.2d 1162, 1163. Under Colorado law, an injury arises out of and in the course of employment even though incurred on the way to work if special circumstances create a causal connection between the employee's injury and employment. *Woodruff World Travel, Inc. v. Industrial Comm.,* 38 Colo.App. 92, 554 P.2d 705, 707. The Act may encompass injuries received on the premises after work hours, *Maintenance Management, Inc. v. Tinkle,* 40 Colo.App. 80, 570 P.2d 840 (1977) (employee returns to premises without express authority one and one half hours after work), off the premises after work hours, *State Compensation Insurance Fund v. Walter,* 143 Colo. 549, 354 P.2d 591 (employee walking along public street to assigned parking place from university shop work place), and in the employee parking lot shortly before work started. *Sieck v. Trueblood,* 29 Colo.App. 432, 485 P.2d 134.[7]

Further, Colorado case law indicates that it is not determinative that the employee is not required to arrive at work in a car or that the employer is not obliged to provide parking. *Walter,* 143 Colo. at 553, 354 P.2d

6. C.R.S. § 8–42–102 provides:
   An employer who has complied with the provisions of Articles 40 to 54 of this title, including the provisions relating to insurance, shall not be subject to the provisions of Section 8–42–101; nor shall such employer or the insurance carrier, if any, insuring the employer's liability under said articles be subject to any other liability for the death or personal injury to any employee, except as provided in said article; *and all causes of action, actions of law, suits in equity, proceedings, and statutory and common law rights and remedies for and on account of such death of or personal injury to any such employee and accruing to any persons are abolished except as provided in said articles.* (Emphasis added).
   The Act has been construed to bar suits by one employee against a co-employee for injuries sustained while both were acting within the course of their employment, *Sieck v. Trueblood,* 29 Colo.App. 432, 485 P.2d 134, 135; C.R.S.1973 § 8–48–108, just as a claim against the employer is barred. *Varsity Amusement Co. v. Butters,* 155 Colo. 330, 394 P.2d 603, 605. From the record it is clear that Nuss was acting within the course and scope of his employment by Rockwell and we reach the same conclusion as to plaintiff for reasons that follow.

7. *See also Divelbiss v. Industrial Comm.,* 140 Colo. 452, 344 P.2d 1084, 1086, *quoting with approval* 1 Larson's Workmen's Compensation Law § 21.60, p. 313: "The course of employment, for employees having a fixed time and place of work, embraces a reasonable interval before and after official working hours while the employee is on the premises engaged in preparatory or incidental acts such as washing or changing his clothes."

at 594, *quoting* 99 C.J.S., Workmen's Compensation § 234, p. 833. It is not decisive that the employer of an injured employee is not the record title owner of the parking lot where the injury occurred, *Woodruff,* 38 Colo.App. at 94, 544 P.2d at 706 (landlord makes parking lot available to tenant's employees), or that the injured employee was not being paid at the time of the injury. *Kitchens v. Department of Labor & Employment,* 29 Colo.App. 374, 486 P.2d 474, 475–76 (gunshot injury to plaintiff in employer's parking lot just before work commenced). Rather such circumstances are only factors in the decisional calculus. *City & County of Denver,* 196 Colo. at 133, 581 P.2d at 1163. In all the authorities cited in the preceding two paragraphs, the employee's injury was adjudged work-related.

Plaintiff seeks to distinguish these cases by contending that no causal connection between employment and injury can be established where the "only thing present was the mere happenstance that [plaintiff] was in the parking lot getting out of his car." (Appellant's Opening Brief, p. 14). Plaintiff argues correctly that the mere presence of the injured employee on the employer's premises is, without more, insufficient to invoke the bar of the Act. *Finn v. Industrial Comm.,* 165 Colo. 106, 437 P.2d 542; *Rocky Mountain Fuel Co. v. Kruzic,* 94 Colo. 398, 30 P.2d 868; *McKnight v. Houck,* 87 Colo. 234, 286 P. 279.

The *Sieck* case is instructive on the scope of the Act in this type of case. There the injured employee, a truck driver, arrived at his employer's place of business, a trucking firm, at 7:15 a.m. for a work shift commencing at 7:30. As was his custom (and that of several other drivers), he drove his car across the truck yard to warm up his tractor motor before work. At that time he collided with a truck driven by a co-employee. The Colorado Court of Appeals held that the injury occurred within the scope of employment. The court focussed on the mutual benefit of this conduct to employee and employer, even though the benefit to the employer was slight. 485 P.2d at 135; *Accord, Berry's Coffee Shop, Inc. v. Palomba,* 161 Colo. 369, 423 P.2d 2; *Walsh v. Industrial Commission,* 34 Colo.App. 371, 527 P.2d 1180.

In the instant case, plaintiff testified at deposition that his supervisor expected employees to be dressed and ready to work at 7:30.[8] (VII R. 71). Further, Rockwell expected that employees would drive or ride in private vehicles because there was no other transportation to the plant. (IV R. 415). While other uses of Lot No. 50 occurred (IV R. 307), plaintiff admits the principal use was for employee parking. (VII R. 51). Both plaintiff and his employer benefitted from the availability of the lot. *See Brogger v. Kezer,* 626 P.2d 700 (Colo.) (test to determine if injury arises "out of and in the course" of employment is whether acts of employee were solely for his own benefit). The reciprocal benefit and the express or implied direction of plaintiff's supervisor concerning starting time bring this case squarely within the

---

8. In Appellant's Opening Brief, p. 10, plaintiff states that his arrival time was not "a result of any employer directive or request." At plaintiff's deposition the following colloquy took place (VII R. 71–72):

Q. And was it Mr. Johnson's expectation that you would be there ready to work at 7:30 with coveralls on?
A. [Plaintiff] Yes, he was starting that.
Q. So you were expected then to be ready at 7:30 with your coveralls on to start work on your shift, is that correct?
A. In your area—or 7:30, you mean?
Q. Yes.
A. Right.
Q. So this was one of the reasons for coming somewhat earlier, was to be able to get through the security checkpoint, get to the locker, change clothes and be ready to work at your particular area in 76 at 7:30 a.m.? Is that correct?
A. Yes, and to kind of have a cup of coffee before we start.

The disparity between these statements and plaintiff's brief on appeal does not appear to create a contested factual issue preventing summary judgment. *See e.g., H.B. Zachry Co. v. O'Brien,* 378 F.2d 423 (10th Cir.). In light of the "totality of circumstances" test used by Colorado courts, we feel the conclusion drawn by the district court from the facts as detailed is not in error.

rule of *Sieck* and other authorities cited above.

The Act is to be broadly and liberally construed to achieve its salutary purposes. *Finnerman v. McCormick,* 499 F.2d 212, 214 (10th Cir.), *cert. denied,* 419 U.S. 1049, 95 S.Ct. 624, 42 L.Ed.2d 644. Chief among the Act's purposes is that the employee is favored with speedy compensation regardless of fault, the employer is granted immunity from common law claims, *Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891, 893, and in return a vicarious statutory liability is substituted. *See generally Thomas v. Farnsworth Chambers Co.,* 286 F.2d 270, 273 (10th Cir.). The district court correctly recognized these purposes by ruling that plaintiff's suit against Nuss and Rockwell is barred by the Act. *Sieck, supra,* 485 P.2d at 135; *Varsity Amusement Co. v. Butters,* 155 Colo. 330, 394 P.2d 603. We are persuaded that the ruling was proper in light of the Colorado law.

## IV

Plaintiff acknowledges that the Government is not responsible under the Federal Tort Claims Act for liabilities of truly "independent contractors," citing *United States v. Orleans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390. (Appellant's Opening Brief at 18). Plaintiff argues that the question of whether Rockwell is a truly independent contractor is one of fact which cannot be decided on the present record so that the summary dismissal as to the Government was error.

Reaching the substance of the issue, plaintiff further says that the United States retains virtually complete control over production of nuclear weapons because of their very nature. Therefore Rockwell is only an "alter ego" acting on behalf of the Government. Plaintiff asserts that the United States has not made an election to be covered by the Act as required. Furthermore he says a suit like his is not barred where workmen's compensation coverage is secured by Rockwell as an "alter ego." Finally plaintiff contends the Act does not apply to territory owned in fee simple by the United States. Thus plaintiff maintains he is entitled to recover from the Government for negligent supervision of its vehicle and Nuss. (I R. 2).

We must reject the argument that genuine issues of fact barred the dismissal as to the Government. We sustain the ruling of the district court without determining whether an "independent contractor" relationship existed in the ordinary sense. We hold instead that on the undisputed facts Colorado law, made applicable by the FTCA, afforded the Government immunity from this action as a "statutory employer" since Rockwell, as required by its contract to perform work for the Government, obtained workmen's compensation insurance which covered the plaintiff's injury.

The FTCA authorizes suit against the United States for personal injuries inflicted by the negligent or wrongful acts or omissions of its employees "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §§ 1346(b) and 2674. Thus plaintiff's right to prevail on the merits of his tort claim turns on an interpretation of Colorado law. The Colorado Workmen's Compensation Act provides, *inter alia,* a derivative immunity from a negligence suit to anyone who contracts with another for work to be done when the party to whom the work is contracted secures workmen's compensation insurance. C.R.S. § 8–48–101(1), (2).[9] The

---

9. Section 8–48–101(2) provides:
   (2) If said lessee, sublessee, contractor, or subcontractor is himself an employer in the doing of such work and, before commencing such work insures and keeps insured his liability for compensation as provided in articles 40 to 54 of this title, neither said lessee, sublessee, contractor, or subcontractor, its employees, or its insurer shall have any right of contribution or action of any kind, including actions under section 8–52–108, against the person, company, or corporation operating or engaged in or conducting any business

Act declares that the party who contracts the work away shall be construed to be the employer. § 8–48–101(1). If the party to whom this statutory employer has contracted work out fails to secure workmen's compensation insurance, the statutory employer is liable to respond in damages to injured employees of the other party. *Edwards v. Price,* 191 Colo. 46, 550 P.2d 856, 860, *appeal dismissed,* 429 U.S. 1056, 97 S.Ct. 778, 50 L.Ed.2d 773. This statutory employer immunity was recently at issue in *Posey v. Intermountain Rural Electric Ass'n,* 41 Colo.App. 7, 583 P.2d 303. There the court stated that a "corporation will be determined to be a statutory employer when it contracts out work which is a part of its regular business and which would ordinarily be accomplished with its own employee," *id.* 583 P.2d at 304, and held the defendant immune from suit.

Plaintiff nevertheless argues that the Government and not Rockwell is the actual employer at Rocky Flats. He relies on the testimony of James Nicks, the Department of Energy assistant area manager for administration for the Rocky Flats area in a criminal trespass case unrelated to the present action. (V R. 484–500). Mr. Nicks testified that approximately 50 Department of Energy employees are stationed at Rocky Flats, with a third of them involved in monitoring operational aspects of the facility such as inspection and quality control. These facts, plaintiff reasons, demonstrate that the United States is the actual employer. Therefore, workmen's compensation coverage secured by Rockwell does not shield the Government, especially if it has not made the election to be covered as required by the Act. Plaintiff says that a trial is required to ascertain the Government's exact status and "[p]laintiff would suggest that insurance secured by someone else will not suffice under the Colorado Workmen's Compensation Act so as to preclude a lawsuit." (Appellant's Opening Brief at 19).

Plaintiff does not cite Colorado authority for this proposition. It appears that his interpretation runs against the plain language of § 8–48–101(2) itself. *See* note 9, *supra.* The Act specifically bars an "action of any kind," *inter alia,* against the person contracting out the work when the party to whom the work is contracted obtains workmen's compensation coverage. In effect, the Act requires an employer such as the United States to make certain that the party to whom the work is contracted has obtained such insurance or face the risk of suit. In this manner the Legislature has assured that employers will not evade the protective policy of the Act by contracting with uninsured parties to perform the employer's work. *Frohlick Crane Service, Inc. v. Mack,* 182 Colo. 34, 510 P.2d 891, 893. Colorado case law does not indicate that these duties are imposed solely on principal-independent contractor relationships as the term is understood in agency law. Rather the statute is intended to cover normal business conducted through the activities of another under various kinds of contractual relationships. *Faith Realty & Development Co. v. Industrial Comm.,* 170 Colo. 215, 460 P.2d 228, 230. This conclusion is supported by the fact that the immunizing provision also extends to lessors and lessees. *See* n. 9, *supra.*

Plaintiff's argument that the United States has not elected coverage is not persuasive. First, the statutory employer immunity provisions do not speak of an express election. Second, as noted, the United States-Rockwell contract requires Rockwell to maintain workmen's compensation insurance as an allowable operating expense. (II R. 213,82). Finally, Rockwell did in fact obtain and maintain such insurance. Moreover, plaintiff's contention that state workmen's compensation acts do not apply to land owned by the Government is patently untenable. *See* 40 U.S.C. § 290; [10] *Travel-*

---

by leasing or contracting out any part or all of the work thereof.

**10.** The relevant provisions of 40 U.S.C. § 290 read as follows:

Whatsoever constituted authority of each of the several States is charged with the enforcement of and requiring compliances with the State workmen's compensation laws of said States and with the enforcement of

*ers Insurance Co. v. Cardillo,* 141 F.2d 362, 363 (D.C.Cir.).

Had a private corporation, instead of the Government, as part of its normal business contracted with another for the operation of Rocky Flats, the corporation would be immune from suit by plaintiff as a statutory employer. *See e.g., Posey,* 583 P.2d at 304–305; *O'Quinn v. Walt Disney Products, Inc.,* 177 Colo. 190, 493 P.2d 344 (construing C.R.S. § 81–9–1 (1963), the predecessor Workmen's Compensation Act); *Herriott v. Stevenson,* 172 Colo. 379, 473 P.2d 720 (to the same effect, but finding intermediate employer uninsured). Plaintiff has not explained why the United States should be denied the statutory employer immunity available to a private party. No reason for such a result is apparent. Despite whatever characterization plaintiff appends to the United States-Rockwell relationship, we are persuaded that the statutory employer immunity bars his suit under Colorado law and that the district court properly dismissed his suit against the Government. *See Roelofs v. United States,* 501 F.2d 87, 93 (5th Cir.), *cert. denied,* 423 U.S. 830, 96 S.Ct. 49, 46 L.Ed.2d 47 (applying Louisiana workmen's compensation law to an Army munitions plant operated by Sperry Rand); *Olveda v. United States,* 508 F.Supp. 255 (E.D.Tex.) (collecting other federal cases applying to the United States the statutory employer defense); *Scanlon v. United States,* Civil No. 78–F–509 (D.Colo., June 21, 1979).[11]

V

There remain several miscellaneous arguments of plaintiff which we will briefly treat.

■ Plaintiff argues that agents of Rockwell and Travelers improperly influenced him to elect the workmen's compensation exclusive remedy in order to reduce their liability. (See VII R. 84–87). The district court stated that there simply was no election to be made. The workmen's compensation claim was received by the Department of Labor and Employment on October 26, 1976, (I R. 36), five months after the accident. Plaintiff first obtained representation shortly after the accident. (VII R. 53). There are no circumstances indicating that defendants' importunings overcame the will of plaintiff and his counsel. However, the district court's holding on this point is grounded on the idea that there was no prejudice to plaintiff when he had no other remedy aside from workmen's compensation benefits. This conclusion is sound. *See Varsity Amusement Co. v. Butters, supra,* 394 P.2d at 605. No reasoning based on plaintiff's "election" appears to have entered into the court's decision to dismiss the action against the Government or to grant the summary judgments for Rockwell and Nuss. (VI R. 2–13).

■ Plaintiff also contends that the district court's orders are defective for failing to state the facts on which it relied or the

and requiring compliance with the orders, decisions, and awards of *said constituted authority of said States shall have the power and authority to apply such laws to all lands and premises owned or held by the United States of America* by deed or act of cession, by purchase or otherwise, which is within the exterior boundaries of any State and to all projects, buildings, constructions, improvements, and property belonging to the United States of America, which is within the exterior boundaries of any State, in the same way and to the same extent as if said premises were under the exclusive jurisdiction of the State within whose exterior boundaries such place may be. (Emphasis added).

**11.** We are mindful that we denied a statutory employer defense to the Government in *Rich-*

*ardson v. United States,* 577 F.2d 133 (10th Cir.). There we applied Florida law and determined that the Government was not entitled to the statutory employer defense because it was not a "contractor," since it had no contractual relationship with the subcontractor which employed the plaintiff. *Id.* at 135. We distinguished *Roelofs* by noting that it was assumed in that case that the United States would have been immune from a third party tortfeasor action, had it been a private employer. *Id.* at 137. However, in *Richardson* we concluded that, if the United States *had* been a private employer, it would *not* have been immune. *Id.* In light of these substantial differences, *Richardson* does not conflict with our conclusion here. *See id.* at pp. 135–37.

reasoning it used. Plaintiff urges that the "provisions of Rule 56, Federal Rules of Civil Procedure, cannot be read separately from Rule 52 which requires specificity in a trial court's findings of fact and conclusions of law." (Appellant's Opening Brief, page 7). However Rule 52(a) expressly states, in pertinent part, that "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b)." *See also Williams v. Eaton,* 443 F.2d 422, 433 (10th Cir.). Because the court's orders were not entered pursuant to Rule 52, which requires findings after a non-jury trial, or pursuant to Rule 41(b) requiring similar findings when a plaintiff's case is dismissed after presentation of his evidence, the language quoted above from Rule 52 would appear to dispose of plaintiff's contention. Further, plaintiff was advised of the reasoning of the court by the judge's orders and comments on the record. (V R. 514–16; VI R. 2–13).[12]

■ Lastly, plaintiff maintains that the failure of defendants to file a report with the local police shows that defendants did not treat Colorado law as applying to the plant and that this further demonstrates that the provisions of the Colorado Workmen's Compensation Act are also inapplicable to the plant on federal land. Plaintiff notes that C.R.S.1973 §§ 42–4–1401, 1403 & 1406 require police reports of all accidents within the state resulting in injury. These sections are not a part of the Workmen's Compensation Act which contains its own reporting requirements. C.R.S.1973 § 8–45–101. Defendants complied with the reporting requirements of that Act. (IV R. 308). Plaintiff's argument on this point is without merit.

## VI

We are convinced that no error is demonstrated in the rulings made by the district court on this record. Accordingly the judgments entered are

AFFIRMED.

---

12. We are mindful of our decisions in *Hill v. Morton,* 525 F.2d 327 (10th Cir.); *Heber Valley Milk Co. v. Butz,* 503 F.2d 96 (10th Cir.); and *Nickol v. United States,* 501 F.2d 1389 (10th Cir.). We feel that their requirements of findings as a statement of reasons for rulings in particular types of cases are not at variance with what we hold here, namely that the district court's orders, taken together with the court's statements from the bench, gave the grounds for the rulings adequately.